1830

Dan J. WEBB and Bobbie J. Webb, Appellants v. T.J. ELROD, Jr., and Eloise E. Elrod, Respondents v. SOUTH CAROLINA TAX COMMISSION, Kenneth Hindman, and Mutual Federal Savings and Loan Association, Third-Party Defendants

(418 S.E. (2d) 559)

Court of Appeals

*Hal J. Warlick* and *Larry A. Welborn,* both of Easley, *for appellants.*

*Kenneth D. Acker,* of Pickens, *for respondents.*

*Judson K. Chapin, III,* Spartanburg, *for third-party defendants.*

Heard April 15, 1992.

Decided May 26, 1992.

CURETON, Judge:

The Webbs sued the Elrods for damages based upon a claim the Elrods interfered with the Webbs' contractual relations with third parties. The Elrods counterclaimed for judgment on two notes and foreclosure of mortgages securing the notes.[1] The primary issue involved in this appeal is the propriety of the trial court's granting the Elrods' motion for directed verdict on the interference with contract cause of action. We affirm.

The Webbs bought a ten acre tract of land for the Elrods in August 1985 and another ten acres in December 1985. They agreed to pay $30,000 for each tract by payment of $2,000 down and the execution of two notes and mortgages of $28,000 each to secure the balances due on the tracts. Payments were $301.82 per month on each note. The Webbs became seriously delinquent in their payments.

To assist the Webbs in keeping the land, the Elrods suggested the Webbs could sell lots to third parties. The third-party purchasers and the Webbs executed bonds for title. The Webbs told the third-party purchasers to make their payments directly to the Elrods. The Elrods agreed to accept the payments and apply them on the notes. The Webbs sold thirteen acres of land for $5,000 per acre. Payments on the bonds for title were structured so that if all purchasers paid as required, then approximately $900 per month would be generated which would more than cover the $603 per month payment due on the Webbs' notes. In any event, all the third-

---

[1] It was stipulated the South Carolina Tax Commission and Mutual Federal Savings and Loan Association, holders of liens junior to the mortgages in issue, would not participate in the trial and appeal of this case.

party purchasers did not make the expected payments in a timely manner and Mrs. Elrod informed the third-party purchasers in February, 1989, she could no longer accept payments from them. She also told one of the third-party purchasers she intended to foreclose on the Webbs' mortgages. After Mrs. Elrod's notification to the third-party purchasers, the purchasers made no further payments to anyone.

The Webbs contend Mrs. Elrod effectively precluded further payments on the bonds for title by telling the third-party purchasers she would not accept future payments from them and advising them of her intent to foreclose. They claim such action amounted to an interference with their contractual relations with the third-party purchasers and the trial court erred in granting the Elrods' motion for directed verdict. We disagree

In ruling on motions for directed verdict, the trial court must view the evidence and all inferences that may reasonably be drawn therefrom in the light most favorable to the nonmoving party. *Sub-Station II of Tennessee v. Oliver*, — S.C. —, 414 S.E. (2d) 141 (1992); *Hobgood v. Pennington*, 300 S.C. 309, 387 S.E. (2d) 690 (Ct. App. 1989).

To establish intentional interference with a contract one  must show the existence of the contract; the other party's knowledge of the existence; the other party's intentional procurement of the breach of the contract; the absence of justification; and resulting damage. *Todd v. South Carolina Farm Bureau Mut. Ins Co.*, 287 S.C. 190, 336 S.E. (2d) 472 (1985); *Camp v. Springs Mortgage Corp.*, 414 S.E. (2d) 784 (S.C. Ct. App. 1992) (Davis Adv. Sh. No. 5 at 37). The Webbs called three third-party purchasers as witnesses. Each testified they dealt only with Mrs. Elrod who told them she could not accept any further payments. Each of these witnesses also testified Mrs. Elrod did not tell them not to deal with the Webbs or not to make their payments to the Webbs. In explaining why she could not accept any further payments, one of the third-party purchasers testified Mrs. Elrod said she intended to foreclose on the Webbs' mortgages. The reason given by these third-party purchasers for making no additional payments to the Webbs was they were not going to make their payments if the Webbs were going to lose the land.

It is undisputed that in February 1989, the Webbs were seriously behind in their obligations to the Elrods. In fact, at that time they owed approximately $3,000 more on each note than the original face amount of the note. The Elrods could have either permitted the Webbs to fall further behind in their payments or exercise their legal right to foreclose their mortgages.[2] The Elrods chose to exercise their legal right to foreclose. The exercise in good faith of a legal right by a party to a contract affords no basis for an action by the second party for intentional interference with a contract even though the consequence of the exercise of the legal right by the first party is to cause a third party not to perform another contract with the second party. *See Mac Enterprises Inc. v. Del E. Webb Dev. Co.*, 645 P. (2d) 1245 (Ariz. Ct. App. 1982); 45 Am. Jur. (2d) *Interference* § 23 (1669) and Supp. 1992); *Restatement (Second) of Torts* § 773 (1979). The evidence presented by the Webbs does not create the inference that Mrs. Elrod acted in bad faith in contacting the third-party purchasers. Nor is there an inference that the purpose of her contacts was to procure the breach of their contracts with the Webbs. We, therefore, hold as a matter of law the communications between Mrs. Elrod and the third-party purchasers were justified.

The Webbs next contend the court improperly forbade Mrs. Webb and another witness to testify about conversations between the third-party purchasers and Mrs. Elrod. During direct examination, Mrs Webb attempted to state what a third-party purchaser told her Mrs. Elrod said to the third-party purchaser.[3] Additionally, Gayla Smith, Mrs. Webb's daughter-in-law, was precluded from testifying about her "understanding from conversations with these other people (unidentified third-party purchasers)." The Webbs claim the trial court should have permitted this testimony because its purpose was to show the "operative fact" that Mrs. Elrod talked with the third-party purchasers and not to show the truth of what she told them.

---

[2] In fact, the Webbs did not contest the right of the Elrods to foreclose the mortgages.

[3] This third-party purchaser testified at trial and was cross examined regarding what Mrs. Elrod told her. We, therefore, see no prejudice resulting from the exclusion of the testimony.

The Webbs' contention affords no basis for reversal. Mrs. Elrod admitted she talked with the third-party purchasers and told them she could not accept any more payments. This fact was confirmed by the three third-party purchases who testified. The only additional pertinent fact this testimony may have proved is Mrs. Elrod told the third-party purchasers she intended to foreclose the Webbs' mortgages.[4] Proof of a statement introduced for the purpose of showing a party relied and acted upon it is not objectionable on the ground of hearsay. *See Player v. Thompson*, 259 S.C. 600, 193 S.E. (2d) 531 (1972) (statement admitted to show notice or knowledge); James F. Dreher, *A Guide to Evidence Law in South Carolina* 86 (J.P. Thames rev. 1979); 29 Am. Jur. (2d) *Evidence* § 497 (1967). Here, regardless of whether the excluded testimony was admissible to show the third-party purchasers acted upon the alleged statements by refusing to make further payments on their bonds for title, we perceive no prejudice to the Webbs.

We have held Mrs. Elrod was justified in explaining to the third-party purchasers the reason she could not accept their payments was because of her decision to foreclose the mortgages. Since she was justified in making the communications to the third-party purchasers, the Webbs' argument is without force.

Accordingly, the order of the trial court is

Affirmed.

BELL and GOOLSBY, JJ., concur.

---

[4] In fact, appellants' counsel implicitly admitted an oral argument that Mrs. Elrod had a right to tell the third-party purchasers she could not accept any more payments but her indication to them that she intended to foreclose was unjustified and effectively brought on their refusal to make additional payments on their bonds for title.