Robert GAILLIARD, Plaintiff,

v.

FLEET MORTGAGE CORPORATION,
Defendant.

No. 2:94–1040–18.

United States District Court,
D. South Carolina,
Charleston Division.

Jan. 11, 1995.

Lawrence Keitt, Orangeburg, SC, for plaintiff.

Robert Stepp, Elizabeth Van Doren Gray, Elizabeth Gelene Howard, Columbia, SC, for defendant.

## ORDER

NORTON, District Judge.

This matter is before the court on the motion of Defendant Fleet Mortgage Corp. ("Fleet") for summary judgment pursuant to Fed.R.Civ.P. 56(c). Because Fleet is entitled to judgment as a matter of law and fact, summary judgment is granted in favor of Fleet. Gailliard's cause of action for intentional interference with a contract between a borrower and himself as closing attorney is legally and factually insufficient.

Gailliard alleges that Fleet intentionally interfered with a contract for services that existed between himself and a Fleet borrower, Yolanda Moultrie ("Moultrie"). Gailliard also makes a general claim that Fleet engaged in a pattern of discouraging borrowers from using Gailliard to perform closings.

Fleet denies that it intentionally interfered with Gailliard's contract and that it discouraged borrowers from using Gailliard's services. Gailliard's cause of action fails because as a matter of law and fact Fleet's conduct did not rise to a termination of the contract and Fleet was justified in informing Moultrie that Fleet did not have a closing letter from Gailliard. The claim also fails because as a matter of undisputed fact Moultrie, not Fleet, terminated her relationship with Gailliard.

Fleet filed its *Motion for Summary Judgment* and supporting memorandum on October 21, 1994, in accordance with the court's scheduling order. The court scheduled a hearing for November 22, 1994. Plaintiff filed his Memorandum in Opposition on November 21 and filed Affidavits in Opposition

to the Motion just before the hearing on November 22. Despite the fact that Plaintiff's Memorandum was 13 days past the due date under the local rules of this court, Local Rule 12.06, D.S.C. (allowing 15 days for a responsive memorandum), the court has considered the Memorandum and Affidavits. The court has afforded Fleet the opportunity to supply counter Affidavits as needed.

## I. FACTS

Moultrie applied for a Fleet mortgage loan on August 19, 1992. At the time of the application, Moultrie selected Gailliard as her closing attorney on a form provided by Fleet. Kathryn Morgan, loan officer at Fleet's Charleston office, took Moultrie's loan application. Affidavit of Kathryn Morgan at ¶¶ 1 and 2. Morgan instructed Moultrie to inform Gailliard that Gailliard needed to provide Fleet with an Approved Closing Agent Protection Letter ("Closing Letter"). Morgan Affidavit at ¶ 2. Morgan told Moultrie that Gailliard could not close the loan unless Gailliard provided Fleet with a Closing Letter. Fleet's policy is that an attorney cannot conduct a closing unless the Closing Letter is provided. Morgan Affidavit at ¶ 4.

Moultrie's loan was thereafter approved. Before the loan closed, Kit Hutson, a loan processor at Fleet, informed Moultrie that Fleet did not have a Closing Letter from any title insurance company on behalf of Gailliard. Affidavit of Kit Hutson at ¶¶ 3; 4. Fleet told Moultrie to either procure a Closing Letter from Gailliard or to select another attorney. *Id.* at ¶ 4. Moultrie selected another attorney to perform the closing. *Id.*

Gailliard does not challenge the content of the conversation between Moultrie and Fleet. In fact, Gailliard did not provide a Closing Letter to Fleet until August 31, 1993. Gailliard stated in his Affidavit that he was informed by Moultrie's realtor, not by Moultrie, that he could not close the loan. The realtor allegedly related to Gailliard that Fleet contended Gailliard had "messed up" loans for Fleet and that therefore Gailliard could not close loans for Fleet borrowers. Affidavit of Terry Seabrook at ¶ 6. Gailliard willingly turned over the file to the realtor so that another attorney could conduct the clos-

ing. Gailliard did not talk directly to Fleet, nor did Gailliard provide a closing letter to Fleet. Gailliard Deposition at 14.

As Fleet points out, a Closing Letter insures a lender against risks with regard to the conduct of an attorney in a closing by specifying the terms and conditions in the event the closing attorney commits an error. If an approved attorney conducts a closing, the title insurance company agrees to reimburse the lender for any loss incurred by the lender in connection with the closing. The Closing Letter guarantees the attorney's work and provides an indemnification to the lender that suffers a loss.

## II. SUMMARY JUDGMENT STANDARD

█ Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the movant has made this threshold demonstration, the non-moving party cannot survive the motion for summary judgment unless he demonstrates that specific, material facts exist which give rise to a genuine issue of fact. *Id.* at 324, 106 S.Ct. at 2553. The non-moving party may not rest on the allegations averred in his pleadings. *Id.* Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

█ Summary judgment serves the useful purpose of disposing of meritless claims before the court and the parties become entrenched in frivolous litigation. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2nd Cir.1987). Although summary judgment is an extreme remedy, the courts should not be reluctant to grant sum-

**1088**

mary judgment in appropriate cases; indeed, summary judgment is mandated where appropriate. *Herman v. City of Chicago,* 870 F.2d 400, 404 (7th Cir.1989); *Meiri v. Dacon,* 759 F.2d 989, 998 (2nd Cir.1985), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *United States v. Porter,* 581 F.2d 698, 703 (8th Cir.1978); *Estate of Detwiler v. Offenbecher,* 728 F.Supp. 103, 134 (S.D.N.Y. 1989); *Burleson v. Illinois Farmers Ins.,* 725 F.Supp. 1489, 1490 (S.D.Ind.1989).

Summary judgment is appropriate in this case, because Gailliard's claim is barred as a matter of undisputed fact and law.

### III. LEGAL DISCUSSION

A. *FLEET ACTED WITHIN THE FRAMEWORK OF THE PREFERENCE STATUTE; THEREFORE NO CAUSE OF ACTION ARISES FOR INTENTIONAL INTERFERENCE.*

■ Gailliard agrees he cannot rely on S.C.Code Ann. § 37–10–102(a) (Law.Co-op.1989) for affirmative relief in this action. *See Camp v. Springs Mortgage Corp.,* — S.C. —, 426 S.E.2d 304, 305 (1992). The section is relevant, however, because Fleet's conduct comported with the statute. The Code provides that a creditor "must ascertain the preference of the borrower as to the legal counsel that is employed to represent the debtor in all matters of the transaction relating to the closing of the transaction...." S.C.Code Ann. § 37–10–102(a) (Law.Co-op.1989).

■ Fleet acted within the borrower preference statute when it asked Moultrie either to choose another attorney or to procure a Closing Letter from Mr. Gailliard. The borrower preference statute requires that an attorney chosen to conduct a closing provide reasonable security to a lender "by way of mortgage title insurance in a company acceptable" to the lender. S.C.Code Ann. § 37–10–102(a). This legislative requirement providing security to the lender conforms with industry custom. The quoted portion of the statute affords a lender the right to reject any lawyer selected by the borrower who is not approved as a closing attorney by a title insurance company.

Fleet had no Closing Letter from Gailliard as of the time Fleet contacted Moultrie. Morgan Affidavit at ¶ 3. Moultrie did not provide a Closing Letter nor did Gailliard offer a Closing Letter to Fleet when Gailliard was notified that he was not on the Fleet approved list. Gailliard Deposition at 14.

Fleet's conduct was within the parameters of the statute because at the time of the closing Fleet did not have reasonable security in the form of a Closing Letter. Fleet's conduct is therefore protected under the statute and the statute provides a defense in favor of Fleet. Because Fleet lacked adequate security, Fleet had the ability, if it so chose, to reject Moultrie's selection outright. Of course, Moultrie was actually afforded her choice of closing attorneys. Moultrie had no claim under the statute because no violation ever occurred. Likewise, Gailliard cannot sustain a claim that is even indirectly derived from the statute.

Gailliard's suit must necessarily derive from Moultrie's right to choose an attorney. Moultrie was simply not deprived of her choice of counsel, because she chose not to proceed with Gailliard. Fleet cannot be liable for Moultrie's choice.

Summary judgment is therefore granted in favor of Fleet on this ground.

B. *FLEET DID NOT INTERFERE WITH GAILLIARD'S CONTRACT.*

■ Fleet did not intentionally interfere with the contract between Moultrie and Gailliard for three reasons: 1) Moultrie, not Fleet, terminated the relationship with Gailliard; 2) Fleet's conduct did not amount to a discharge of Gailliard and therefore does not constitute interference; and 3) Fleet's conduct was justified because Fleet exercised its legal right and acted with a legitimate business purpose.

To prevail on a tortious interference claim, Gailliard must prove the following elements:

1. The existence of a valid contract;
2. Fleet's knowledge of the contract;
3. Fleet's intentional procurement of its breach;
4. The absence of justification; and

5. Resulting damages.

*Springs,* 426 S.E.2d at 305.

Gailliard has not adduced evidence in response to the summary judgment motion that would fulfill these elements, therefore Gailliard's claim fails.

### 1. *Moultrie terminated the relationship.*

Fleet did not terminate the contract between Moultrie and Gailliard. Fleet notified Moultrie that Gailliard was not on Fleet's approved attorney list because Fleet did not have a Closing Letter on behalf of Gailliard. Morgan Affidavit at ¶¶ 3; 7.

Moultrie was told that she could wait until Gailliard could provide a letter to Fleet or that she could select another attorney. Morgan Affidavit at ¶ 6. Moultrie elected to choose another attorney and to proceed with the closing. Fleet cannot be liable for Moultrie's choice.

### 2. *Fleet did not procure a breach of Gailliard's contract.*

Fleet is also entitled to summary judgment because Fleet's conduct did not amount to the discharge or termination of Gailliard's contract with Moultrie and therefore one of the required elements of intentional interference has not been established. *See DeBerry v. McCain,* 275 S.C. 569, 274 S.E.2d 293, 296 (1981). In *DeBerry* the court upheld the demurrer of a complaint against members of the South Carolina Insurance Commission after the Commission settled a suit in which it was represented by the plaintiff (an attorney) without the plaintiff's assistance. The court found that the Commissioners' decision to negotiate a settlement was not the equivalent of discharging the plaintiff. *Id.* Similarly here, Fleet's action cannot be construed as a discharge of Gailliard or a termination of Gailliard's contract. No evidence exists that Fleet intentionally procured the termination of a contract as is required.

### 3. *Fleet's conduct was motivated by legitimate business purposes; therefore, if Fleet interfered with a contract, such interference was justified.*

Fleet is also entitled to summary judgment because Fleet's suggestion that Moultrie either procure a Closing Letter from Gailliard or to choose another attorney was justified, and therefore Gailliard cannot establish an essential element to a claim for intentional interference with a contract. *Springs,* 426 S.E.2d at 305. Gailliard has the burden of proving that Fleet was not justified in suggesting that Moultrie choose another attorney. *Id.*

██ Interference with a contract is justified when it is motivated by legitimate business purposes. *Embree Const. Group v. Rafcor, Inc.,* 330 N.C. 487, 411 S.E.2d 916, 924 (1992); *Fitzgerald v. Wolf,* 40 N.C.App. 197, 252 S.E.2d 523 (1979). In *Waldrep Bros. Beauty Supply v. Wynn Beauty Supply,* 992 F.2d 59, 63 (4th Cir.1993) the court of appeals reversed the jury's verdict on an intentional interference claim. The *Waldrep* court held that competition provided justification for the interference by one distributor for another distributor's relationship. *Id.* Wynn's interference, persuasion of the purchaser that Wynn could do a superior job to Waldrep, was justified as a legitimate business purpose. *Id.* The court concluded that the incidental harm of the loss of business to Waldrep did not amount to tortious intentional interference because Wynn did not act out of malice to ruin or damage Waldrep's business, but rather out of the proper and legitimate purpose of competing by promising better services. *Id.*

Similarly, at the time it conveyed information to Moultrie, Fleet was acting within the security requirement in the preference statute, S.C.Code Ann. § 37–10–102(a). The statute afforded Fleet the right to require adequate security. Refusal to close in the absence of such security is a legal right afforded to Fleet under the statute. Fleet acted in good faith in conveying the information to Moultrie regarding the absence of the Closing Letter. Fleet cannot therefore be liable for intentional interference.

██ A party who in good faith exercises a legal right "affords no basis for an action by the second party for intentional interference with a contract" despite the fact it may cause a third party not to perform a contract.

*Webb v. Elrod,* 308 S.C. 445, 418 S.E.2d 559, 561 (App.1992). In *Webb,* the court upheld the trial court's motion for a directed verdict. *Id.* 418 S.E.2d at 560. The defendant had informed third party purchasers of land that she would no longer accept payments that had previously been applied to the plaintiff's original mortgage debt. *Id.* The defendant had also informed the purchasers that she intended to foreclose on the property. *Id.* The court found that communication of such information was not evidence that the defendant acted in bad faith, nor could the communication support the inference that the defendant intended to procure a breach of contract. *Id.* 418 S.E.2d at 561. The court concluded by finding that as a matter of law, the communications were justified. *Id.*

Likewise, the absence of a Closing Letter constitutes a legitimate business purpose which protected Fleet's conduct and entitled Fleet to communicate that information with its borrower. As a legitimate business purpose existed in favor of Fleet, summary judgment is granted in favor of Fleet on that ground.

### C. *GAILLIARD WAS DAMAGED BY HIS OWN CONDUCT AND CANNOT RECOVER IN THIS CASE.*

■ Summary judgment is granted in favor of Fleet because Gailliard contributed to any damage he may have incurred. Moultrie's realtor conveyed to Gailliard that Gailliard was not on the approved list. Gailliard Deposition at 11. Gailliard testified that the realtor was frantic and that she told Gailliard that Moultrie needed to get the loan closed because she needed to get into her house. *Id.* at 13–14. Gailliard told Moultrie's realtor that he would give the closing file to "someone else to complete the closing." Gailliard provided the file to the realtor. *Id.* Gailliard did not offer to provide a Closing Letter to Fleet, nor did Gailliard tell Fleet that he had a Closing Letter. *Id.* at 12; 14.

Gailliard's failure to provide a letter to Fleet and Gailliard's readiness to turn over the file to another attorney preclude this suit,

because he could have avoided the damage about which he complains. Gailliard's damage was not caused by Fleet, but was caused by his failure to provide a Closing Letter to Fleet. Fleet cannot be liable for Gailliard's own failure to provide the required information to Fleet.

Nor can Fleet be liable for Moultrie's failure to communicate that requirement to Gailliard or for Moultrie's choice of another attorney. Gailliard did not contact Fleet before the closing to inquire about the statements allegedly made by Fleet to the realtor relating to Gailliard's competence. Those statements were denied by Fleet. Fleet had no relationship with Gailliard. Gailliard was Moultrie's attorney, and if information was miscommunicated from Moultrie to Gailliard, then Fleet cannot be liable for such miscommunication.

Gailliard should have attempted in good faith to resolve the dispute with Fleet, as did the attorney in *Springs,* 426 S.E.2d at 306. One "who is injured by the breach of a contract or the mere negligence of another [has the duty] to reasonably exert himself to avoid and to lessen the damages resulting therefrom.... Therefore, there can be no recovery for damages which might have been avoided." *Harper v. Western Union Telegraph Co.,* 133 S.C. 55, 130 S.E. 119, 121 (1925). Summary judgment is therefore appropriate on behalf of Fleet.

### D. *FLEET DID NOT DISCOURAGE BORROWERS FROM USING GAILLIARD'S SERVICES.*

■ Gailliard alleged generally that Fleet has discouraged other borrowers from using Gailliard as their closing attorney. Complaint at ¶ 9. Gailliard's general claim of discouragement does not state a cause of action.

Gailliard's allegation does not constitute a claim for interference with prospective contracts.[1] To succeed on a claim for intentional interference with prospective contractual relations Gailliard must prove the following:

---

1. Gailliard alleges "[t]hat the Plaintiff is informed and believes that the Defendant has engaged and continues to engage in a pattern of discouraging various potential clients from using Plaintiff's services".

1) intentional interference with potential contractual relations; 2) for an improper purpose or by improper methods; and 3) resulting injury. *Crandall Corp. v. Navistar Internat'l Transportation Corp.,* 302 S.C. 265, 395 S.E.2d 179, 180 (1990). Even if properly plead, Gailliard cannot prove that cause of action.

 Fleet has not discouraged borrowers from using Gailliard to perform closings. Morgan Affidavit at ¶ 9. Gailliard has closed loans for Fleet since the Moultrie loan. Gailliard Deposition at 19. Gailliard knows of no instance, other than the Moultrie loan, for which he did not perform the closing after having been selected by the borrower as the closing attorney. Gailliard Deposition at 25. Gailliard states in his Affidavit that "numerous clients have informed him of Fleet's refusal to allow loans to close using his services...." Affidavit of Robert Gailliard at ¶ 8. Gailliard's Affidavit regarding this issue constitutes hearsay, as it sets forth Gailliard's conversations with third parties. Fed. R.Ev. 801. Affidavits in opposition to a summary judgment motion "shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence...." Fed.R.Civ.P. 56(e). Affidavits that contain inadmissible hearsay are insufficient to oppose a summary judgment motion. *Sakaria v. TWA,* 8 F.3d 164, 171 (4th Cir.1993); Fed. R.Ev. 802. The court will disregard paragraph eight on those grounds.[2]

Nor does the lone affidavit from one of Gailliard's clients support Gailliard's claim. Rev. Kenneth Devine states in his affidavit that he chose Gailliard as his closing attorney and that Fleet thereafter informed him that Gailliard was not on the approved list. Ultimately, according to Devine, Fleet allowed Gailliard to perform the closing. Because Gailliard closed the loan, Gailliard cannot claim to have been damaged by whatever occurred in this transaction. Gailliard cannot meet the elements for interference with prospective relations because no factual issue that interference has occurred has been set

forth. Summary judgment is therefore appropriate in favor of Fleet.

## IV. CONCLUSION

Fleet did not interfere with the contract between Yolanda Moultrie and Gailliard. Fleet justifiably communicated to its borrower, Moultrie, regarding Fleet's requirements for a closing. Moultrie, not Fleet, then apparently terminated the relationship with Gailliard. Fleet is simply not liable for the conduct of Moultrie and cannot be liable for communicating to her the information regarding the absence of a Closing Letter.

IT IS THEREFORE

**ORDERED** that Defendant's Motion for Summary Judgment be granted.

AND IT IS SO ORDERED.

---

2. Gailliard actually closed Fleet loans on behalf of three of the individuals listed in Gailliard's Affidavit, Janie Fischer, Norman Dickenson and Kenneth Devine. Supp.Morgan Affidavit at ¶ 1.

Mr. McClain applied for a Fleet loan and chose an attorney other than Gailliard as his closing attorney. *Id.* at ¶ 2. Mr. McClain ultimately withdrew his loan application. *Id.*