2237

SOUTHERN CONTRACTING, INC., Appellant v. H.C. BROWN CON-
STRUCTION COMPANY, INC. and Great American Insurance Com-
pany, of whom Great American Insurance Company is Respondent.

(450 S.E. (2d) 602)

Court of Appeals

*Henry P. Wall, Haynsworth, Marion, McKay & Guerard,* Columbia, *for appellant.*

*Marvin D. Infinger, Sinkler & Boyd,* Charleston, *for respondent.*

Heard Sept. 7, 1994.

Decided Oct. 10, 1994; Reh. Den. Nov. 29, 1994.

HOWARD, Acting Judge:

This is an appeal from the grant of partial summary judgment to Great American Insurance Company on tort claims by Southern Contracting, Inc. (SoCon) for interference with contractual relations and interference with prospective business advantage. We affirm.[1]

In early 1991, H.C. Brown Construction Company (Brown) was awarded a contract to perform a major renovation project at The Citadel for approximately five million dollars. The contract was awarded pursuant to the South Carolina Consolidated Procurement Code, S.C. Code Ann. §§ 11-35-10 to -5270 (1986). It required Brown to obtain a bond assuring 100% performance, as well as a bond to assure labor and material payment. Great American Insurance Company (Great American) provided these required bonds to The Citadel on behalf of Brown.

As a part of a contract to provide these bonds, Great American required Brown to obtain 100% performance bonds and payment bonds from major subcontractors to minimize potential losses to Great American. Brown agreed to obtain these bonds from those subcontractors having a subcontract of $75,000 or more on the project. Great American's contract also required an indemnity agreement from Brown and an as-

---

[1] The circuit court entered judgment on these claims pursuant to Rule 54(b), SCRCP. The other claims alleged by SoCon against H.C. Brown and Great American Insurance Company are not part of this appeal.

signment by Brown of its rights under the subcontracts and the subcontractors' bonds.

SoCon alleges it entered into a subcontract with Brown to perform the heating and air conditioning, plumbing, and electrical work on the project for approximately $1.7 million. The existence and extent of a contract between SoCon and Brown is in dispute. It is undisputed, however, that Brown forwarded a written subcontract to SoCon in April of 1991, which SoCon revised by deleting the requirement for 100% performance and payment bonds. According to an affidavit, SoCon could not provide a bond in April because it had temporarily depleted its "bond credit" on another project. However, SoCon asserts it would have been able to provide a bond in late August or early September of 1991 when it was scheduled to begin work on The Citadel project. Brown never executed the revised contract, although SoCon maintains it performed preliminary work in the amount of $39,576 with the consent of Brown, for which it has not been paid.

In June of 1991, SoCon received a letter from Brown containing a seventy-two hour deadline in which to provide the bonds or have the subcontract offer declared void. No bonds were forthcoming, and SoCon maintains Brown wrongfully terminated their agreement shortly thereafter.

In its complaint, SoCon alleged Great American directed and caused Brown to wrongfully terminate its agreement with SoCon by demanding Brown require the bonds from SoCon within seventy-two hours. SoCon pointed to Great American correspondence to bolster its position that Great American interfered with its contract and prospective business advantage with Brown. In an April 1991 memorandum to a local agent, Great American questioned SoCon's financial status. In another memorandum to this agent in June of 1991, the bond manager stated in his opinion Brown should not award all of the plumbing, HVAC, and electrical work to SoCon. According to SoCon, Great American singled it out because Great American did not pressure Brown to obtain bonds from other subcontractors until they were to begin work on the project.

Great American moved for summary judgment on the ground that, even if it did require Brown to terminate a contract with SoCon, the action was justified. The circuit court

held Great American's insistence upon the subcontractor's bond was legally justified because Great American had a right to insist upon performance by Brown, even if to do so resulted in termination of Brown's relationship with SoCon. The court relied upon the recent decision of *Webb v. Elrod*, 308 S.C. 445, 418 S.E. (2d) 559 (Ct. App. 1992). SoCon appeals, arguing that the issue of justification is a question of fact for the jury, and summary judgment was inappropriate. We disagree.

We begin our analysis by recognizing the basic principle that summary judgment is only appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Cafe Assocs., Ltd. v. Gerngross*, 305 S.C. 6, 406 S.E. (2d) 162 (1991). The evidence and inferences drawn therefrom should be viewed in the light most favorable to the nonmoving party. *Id.*

For SoCon to establish a cause of action for intentional interference with contractual relations, it must prove the following elements: 1) the existence of a contract; 2) Great American's knowledge of the contract; 3) the intentional procurement of its breach; 4) the absence of justification; and 5) resulting damages. *Kinard v. Crosby*, — S.C. —, 433 S.E. (2d) 835 (1993). The controversy on appeal involves the fourth element, the absence of justification. SoCon argues justification is a factual issue to be decided by a jury.

In the recent case of *Webb v. Elrod*, this court addressed the issue of good faith and motive in the exercise of a legal right under contract which results in the interference with a third party's contract. In that case the Webbs purchased land from the Elrods, giving a mortgage to the Elrods to secure the unpaid portion of the purchase price. Thereafter, the Webbs sold part of the land to third parties, each of which were likewise required to make installment payments. By agreement, the third-party payments were made directly to the Elrods, for which the Webbs were to receive credit on their purchase money mortgage payments. When the Webbs became delinquent in their portion of the monthly payment, the Elrods notified the third parties they would no longer accept payments because they intended to foreclose on the Webbs. As a result, the third parties quit making their payments under their contractual obligations to the Webbs. 308 S.C. at 446-47, 418 S.E. (2d) at 560.

The Webbs sued the Elrods, claiming tortious interference with their contractual relations with third parties. Sustaining the trial court's grant of a directed verdict, this court recognized that "[t]he exercise in good faith of a legal right by a party to a contract affords no basis for an action by the second party for intentional interference with a contract even through the consequence of the exercise of the legal right by the first party is to cause a third party not to perform another contract with the second party." *Id.* at 448, 418 S.E. (2d) at 561.

The issue thus becomes whether the conduct of Great American in enforcing its contract and its motives in doing so present factual issues in this case. SoCon argues, viewing the evidence in a light most favorable to it, factual issues are presented regarding the good faith of Great American because of the selective manner in which Great American enforced the subcontractor bond provisions and the manner of enforcement. By essentially requiring its termination, SoCon asserts Great American somehow exceeded the scope of its rights under the bond contract with Brown. In other words, the Great American contract with Brown did not specifically give Great American control over who was hired to perform the work.

In the case of *McMaster v. Ford Motor Co.*, 122 S.C. 244, 115 S.E. 244 (1921), our Supreme Court first recognized an act done in the exercise of a legal right cannot be treated as wrongful and actionable merely because a malicious motive prompted the exercise of that right. Even in the recognition of this principle, however, the court qualified this proposition as follows:

> It has been suggested that some apparent conflicts of opinion can be reconciled by observing the difference between absolute and qualified rights, and by limiting the general proposition above stated to the exercise of absolute rights. (Citation omitted.) The suggestion is not without force, for unquestionably the law regards some rights as absolute and others as qualified. But the cases show that courts and judges have differed as to the quality of the same right, some holding it absolute, and others considering it as qualified by the circumstances in which

it was exercised. And may not the same right be absolute in some circumstances and qualified in others? It would be difficult, if not impractical, to make a fixed classification of rights, or to formulate any general rule to be applied in all cases, because of the great variety of rights which men enjoy in their intercourse with each other and the infinitely varying circumstances in which they are exercised. Therefore, while we approve the proposition above stated as a general rule, we are not prepared to hold that it is inflexible, and may not be modified by circumstances. It is sufficient for this case to say that the rights which defendants exercise are superior to any right of plaintiff to prevent the exercise thereof.

*Id.* at 252-53, 115 S.E. at 246.

Recognizing, then, action taken which interferes with another's contract rights or prospective business opportunities involves an analysis of the circumstances, it can be said a factual issue exists unless the actor is exercising an absolute right, equal or superior to the right invaded. *See i.d.; Mitchell v. Aldrich,* 122 Vt. 19, 163 A. (2d) 833 (1960); 45 Am. Jur. (2d) *Interference* § 23 (1969).

Turning now to the case at hand, there is no factual dispute as to the existence of the bonding agreement between Great American and Brown. Likewise, there is no dispute that this bonding agreement required as a condition major subcontractors (those having contracts for $75,000 or more) obtain 100% bonds to assure performance and payment.

The existence and terms of a contract between Brown and SoCon is in dispute. To the extent such a contract did exist, however, its viability is dependent upon the existence of a valid contract between Brown, as contractor, and The Citadel, as owner. A condition of that contract, in turn, was a 100% bonding requirement for Brown. Indirectly, then, the SoCon contract, if any, was dependent upon the Great American/Brown bond agreement. By the terms of the Great American contract, the financial undertaking exceeded five million dollars. The total amount of the alleged SoCon subcontract was approximately $1.7 million. Clearly the Great American contract was equal or superior to any agreement between Brown and SoCon under these circumstances.

Great American had an absolute right under its contract with Brown to command compliance with the subcontractor bonding requirement. To do so was nothing more than insistence upon performance of the contract by Brown. SoCon was not a party to that contract and had no contractual right to require good faith and fair dealing by Great American. Therefore, any inquiry into the manner or uniformity with which Great American chose to enforce its contract with Brown is irrelevant.

SoCon argues a factual issue is presented because of the means by which Great American chose to act, citing as authority *American Sur. Co. v. Schottenbauer*, 257 F. (2d) 6 (8th Cir. 1958). In that case a workers compensation insurer forced its insured to fire an employee who had contracted a disease which increased its risk for future compensation payment. *Id.* at 9. On appeal, the insurer argued its action was justified, or privileged, because the insurance relationship "vested" the insurer with such an interest in the business of the insured employer it was justified, as a matter of law, in interfering as it did. *Id.* at 11. The court, applying Minnesota law, ruled justification in those circumstances was a jury issue. *Id.* at 12.

In *American Surety*, the insurer did not argue the contract either gave it control over hiring by its insured or mandated certain criteria for retention of employees. Although the policy allowed cancellation at any time by the insurer, the threat of cancellation was not given to enforce a contract right which the insurer had. Rather, it was motivated by a desire, outside of any contract right, to further its own business interests. Under those circumstances, the court held a factual issue was created as to whether the exercise of a legal right by improper means (fire plaintiff or we cancel) was justified. *Id.* Unlike American Surety Company, Great American had a contract provision requiring the subcontractor bonds. Thus, its threat of cancellation was as a result of its absolute legal right to insist upon performance by Brown.[2]

---

[2] SoCon also relies upon *Schaeffer v. King*, 223 Ga. 468, 155 S.E. (2d) 815 (1967), and *Lincor Contractors, Ltd. v. Hyskell*, 39 Wash. App. 317, 692 P. (2d) 903 (1984), for the proposition justification is generally a question of fact. In *Lincor* a finance company forced a property owner to fire his contractor under a threat of refusal to disburse construction loan funds. The finance com-

Under this same reasoning, SoCon's cause of action for intentional interference with prospective contractual relations also fails. The elements of this cause of action are 1) Great American's intentional interference with SoCon's prospective contractual relations; 2) for an improper purpose or by improper methods; and 3) resulting injury. *Crandall Corp. v. Navistar Int'l Transp. Corp.*, 302 S.C. 265, 395 S.E. (2d) 179 (1990). There is no evidence to suggest any purpose or motive by Great American other than the proper pursuit of its contract rights with Brown. As stated previously, Great American had an absolute right to insist upon performance by Brown. The threat of termination of a contract upon material breach by the other party to it is a legally proper action. *See Wingard v. Exxon Co.*, 819 F. Supp. 497 (D.S.C. 1992) (a party does not violate covenants of good faith and fair dealing by demanding the other party perform as agreed).

For the foregoing reasons, we find Great American's conduct was justified as a matter of law. Therefore, the judgment of the trial court is

Affirmed.

SHAW and GOOLSBY, JJ., concur.

---

pany had no right under its contract to require removal of the contractor. *Id.* 692 P. (2d) at 908. In *Schaeffer* the plaintiff employee sued his supervisors for causing his termination by providing false and malicious information in an employer investigation. The supervisors argued they had authority to fire plaintiff, with or without cause, because his employment was at will. *Id.* 155 S.E. (2d) at 816. Here again, the supervisors were not acting to enforce a valid contract to which they were a party. *Id.* Both cases are distinguishable from the case at bar upon the same grounds as *American Surety* in that the defendants were not acting to enforce an absolute contractual right. Thus, whether or not they had a right to act without qualification was a factual issue.