CITYLINK GROUP, LTD., *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. HYATT CORPORATION, Defendant-Appellee and Cross-Appellant.

First District (6th Division)   No. 1—99—0943

Opinion filed May 12, 2000.

Welsh & Katz, Ltd., of Chicago (Robert B. Breisblatt, John L. Ambrogi, and Louise T. Walsh, of counsel), for appellants.

Torshen, Spreyer, Garmisa & Slobig, Ltd., of Chicago (Jerome H. Torshen and Abigail K. Spreyer, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs, Citylink Group, Ltd. (Citylink), Hotel Services, Ltd. (Hotel Services), and Roboserve, Inc. (Roboserve), appeal from several orders of the circuit court of Cook County: (1) granting summary judgment in favor of defendant, the Hyatt Corporation (Hyatt), in connection with a breach of contract action regarding the installation of computerized in-room mini-bars at the Hyatt Regency Chicago (HRC), and (2) dismissing certain counts of Roboserve's complaint. This opinion addresses only plaintiffs' appeal from the order of the trial court entered February 10, 1999, granting summary judgment in favor of Hyatt on count I of plaintiffs' complaint for fraud, and dismissing count II of plaintiff's complaint pursuant to sections 2—615 and 2—619 of the Illinois Code of Civil Procedure[1] (735 ILCS 5/2—615, 2—619 (West 1994)).

This appeal arises out of two cases originally brought in federal court by Roboserve against Kato Kagaku, Ltd. (Kato), the owner of the HRC and employer of Hyatt, as manager of the HRC. Roboserve prevailed on certain counts against Kato in the federal court and brought this subsequent state action against Hyatt to recover damages for fraud (count I) and tortious interference with prospective business relations (count II) respecting the same mini-bar installation contract. Kato is not a party to this appeal.

On appeal, plaintiffs contend that: (1) the trial court erred in failing to award attorney fees for costs incurred in the prior federal litigation; and (2) the trial court erred in dismissing its claim for tortious

---

[1] In their notice of appeal, plaintiffs appealed from portions of orders of the trial court entered on September 18, 1997, February 10, 1998, July 10, 1998, and February 10, 1999. Hyatt filed a cross-appeal from orders of the trial court entered on March 10, 1997, June 26, 1997, and from portions of the order entered on September 18, 1997. Hyatt then filed a motion in this court to strike and dismiss portions of plaintiffs' notice of appeal and to declare its own cross-appeal moot, noting, *inter alia*, that: (1) plaintiffs presented no argument on appeal relevant to any order other than that entered by the trial court on February 10, 1999, which granted Hyatt's motion for summary judgment as to count I of plaintiffs' second amended complaint; and (2) the order entered on September 18, 1997, pertained to Hyatt's motions to dismiss plaintiffs' original complaint. Plaintiffs subsequently filed a first amended complaint without preserving the dismissed portions of the original complaint. No response to Hyatt's motion was filed by plaintiffs. By order of this court, all portions of plaintiffs' notice of appeal pertaining to orders other than the order of February 10, 1999, are stricken and dismissed, and Hyatt's cross-appeal is declared moot.

interference with prospective business relations. For the following reasons, we affirm the judgment of the trial court.

## BACKGROUND

Roboserve is a company that leases and services hotel in-room mini-bars. On June 23, 1986, Roboserve entered into a concession agreement with Hyatt, as manager of the HRC, to install 1,000 mini-bars (RoboBars) in the rooms at the HRC. Hyatt in turn agreed that the HRC would use "reasonable endeavours" to place guests most likely to use the RoboBars into the rooms equipped with the RoboBar units. On October 2, 1986, Roboserve and Hyatt negotiated an amended concession agreement extending its duration to five years from "the date when all the RoboBar units have been commissioned" or installed.

Between February and April 1987, Roboserve installed 900 of the 1,000 RoboBars in the west tower of the HRC. Late in 1987, Hyatt informed Roboserve of its intention to contract with ServiSystems, another mini-bar vendor, to install its "ServiBars" in the east tower of the HRC. Hyatt subsequently installed 970 ServiBars in the east tower of the HRC. Hyatt represented to RoboServe that a test would be conducted between the two mini-bar systems and that the "winner" would get the contract for the entire hotel. Unbeknownst to RoboServe, on May 1, 1988, Hyatt signed a seven-year contract with ServiSystems to provide ServiBars, beginning on May 15, 1988.

In August 1988, Kato purchased the HRC and assumed the prior owner's management agreement, which provided that Hyatt would manage the hotel. Kato also assumed all of the contracts of the prior owner, including the concession agreement.

RoboServe was subsequently informed that it had "won" the one-year test. Thereafter, RoboServe and Hyatt began negotiating for the replacement of the ServiBars with RoboBars. Hyatt did not reveal the existence of the seven-year contract with ServiSystems. Negotiations dragged on for about three years, and Roboserve did not press Hyatt for the installation of the remaining 100 RoboBars pursuant to the original concession agreement. In February 1992, Hyatt notified Roboserve that it would not replace the ServiBars with RoboBars at the HRC as a result of "complications of another contractual arrangement."

## FIRST FEDERAL LAWSUIT

On August 4, 1992, Roboserve filed an action against Kato for breach of contract, wrongful termination and fraud in the United States District Court for the Northern District of Illinois. Roboserve

sought to hold Kato responsible for the actions of its agent, Hyatt. A trial commenced in October 1993. The jury returned a verdict in favor of Roboserve on all counts, awarding compensatory and punitive damages totaling $9,950,000. On Kato's posttrial motion, the district court entered a remittitur of $127,500 on the wrongful termination claim, reducing the judgment to $9,722,500. *Roboserve, Inc. v. Kato Kagaku Co.*, 873 F. Supp. 1124 (N.D. Ill. 1995).

## FIRST FEDERAL APPEAL

Kato appealed from the $9,722,500 judgment in the United States Court of Appeals for the Seventh Circuit. The appeals court affirmed the jury's findings of breach of contract, wrongful termination and fraud. However, the appeals court vacated the award of damages for the breach of contract and fraud counts, reduced the compensatory damage award from $1 million to $37,810, and eliminated the punitive damages award under the fraud count. The appeals court further determined that the damages for breach of contract should have been limited to $1,053,784, and to $722,500 for wrongful termination, for a total award to Roboserve in the amount of $1,814,094, plus $25,000 in costs. The appeals court remanded the case to the district court for a new trial on the issues of damages for breach of contract and fraud. *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d (7th Cir. 1996).

## NEW TRIAL ON DAMAGES UPON REMAND

On remand to the district court, Kato was granted an offset in the amount of $312,687.22, against the portion of the judgment in the amount of $722,500, pertaining to plaintiff's wrongful termination claim. The offset represented monies paid for the use of RoboBars, which were not removed from the Hyatt Regency by Roboserve notwithstanding Roboserve's claim that the contract had been terminated. *Roboserve, Inc. v. Kato Kagaku Co.*, 936 F. Supp. 522 (N.D. Ill. 1996); *Roboserve, Inc. v. Kato Kagaku Co.*, 942 F. Supp. 1199 (N.D. Ill. 1996). On Roboserve's appeal, the district court's order granting the setoff was affirmed. *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027 (7th Cir. 1997).

## SECOND FEDERAL LAWSUIT

In 1996, Roboserve filed a second case against Kato in the district court claiming breach of contract and unjust enrichment arising out of the use of the RoboBars during the same period as claimed in the prior litigation. The district court granted Kato's motion for summary judgment on grounds of *res judicata. Roboserve, Inc. v. Kato Kagaku Co.*, No. 96 C 7098 (N.D. Ill. February 19, 1997).

SECOND FEDERAL APPEAL

Roboserve appealed the summary judgment order of the district court. The appeal was consolidated with the second appeal from the first case in the district court and the judgment was affirmed. *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027 (7th Cir. 1997).

PRESENT STATE ACTION

A. CHRONOLOGY

The record reveals the following chronology:

| | |
|---|---|
| July 2, 1996: | Original complaint filed. |
| March 26, 1997: | Order entered denying Hyatt's section 2—615 motion to dismiss plaintiffs' complaint. |
| June 26, 1997: | Order entered denying Hyatt's motion to dismiss count III of plaintiffs' complaint. |
| September 18, 1997: | Order entered granting, in part, Hyatt's section 2—619 motion on count I and granting Hyatt's section 2—619 motion on count II. |
| October 9, 1997: | First amended complaint filed. |
| February 10, 1998: | Order entered denying Hyatt's motion to dismiss count I of amended complaint and granting motion to dismiss count II with prejudice. |
| March 12, 1998: | Hyatt filed motion for summary judgment. |
| July 10, 1998: | Hyatt's motion for summary judgment granted in part. |
| December 9, 1998: | Second amended complaint filed. |
| January 25, 1999: | Hyatt files motion to dismiss second amended complaint. |
| February 10, 1999: | Order entered denying motion to dismiss count I, granting motion to dismiss count II with prejudice, and granting summary judgment in favor of Hyatt on count I of second amended complaint. |

## B. BACKGROUND

On July 2, 1996, plaintiffs filed their original action in the circuit court of Cook County against Hyatt alleging in three counts that Hyatt: (1) defrauded plaintiffs, by the same conduct as alleged in the federal litigation (count I); (2) interfered with and induced Kato to breach the concession agreement as determined in the federal litigation (count II); and (3) as agent of "other Hyatt managed Hotels across the United States and abroad" interfered with plaintiffs' "reasonable expectancy of entering into a valid business relationship with the Hyatt Regency Chicago and other Hyatt managed hotels" (count III).

On March 26, 1997, the trial court, Judge William Lassers presiding, denied Hyatt's section 2—615 motion to strike and dismiss plaintiffs' complaint. Hyatt then moved to dismiss count III of the complaint pursuant to section 2—619. On June 26, 1997, the trial court denied Hyatt's motion and ordered Hyatt to answer to count III.

On September 18, 1997, Judge Lassers denied Hyatt's section 2—619 motion to strike and dismiss plaintiff's claim for tortious interference with prospective business relations and entered a memorandum opinion and order: (1) granting Hyatt's section 2—619 motion to dismiss count II (interference with contract) on grounds of *res judicata*; (2) striking count I (fraud) on grounds of *res judicata*, and (3) ordering plaintiffs to file an amended complaint. The trial court held:

> "In the federal lawsuit *** the action against Kato was based on the theory of *respondeat superior*, in other words Hyatt was the agent for Kato and the [Hyatt Regency Chicago] ***. Case law provides that when there is an adjudication against a principal based upon the acts of the agent then they are said to arise from the same operative facts and cannot be asserted against the agent in a subsequent action."

The only surviving claims were plaintiffs' claims against Hyatt with respect to Hyatt Hotels *other than the Hyatt Regency*.

On October 9, 1997, plaintiffs filed a two-count amended complaint alleging fraud (count I) and tortious interference with prospective business relations (count II). Plaintiffs alleged that Hyatt defrauded plaintiffs by acting "of its own accord and apart from its role as agent for [HRC] or Kato."

Plaintiffs further alleged that Hyatt interfered with their "reasonable" expectancy of entering into a valid business relationship with Hyatt itself. Plaintiffs alleged that they were told by Hyatt that in order to do business with Hyatt, plaintiffs first had to enter into a business "arrangement" with The Marmon Group (Marmon), a "sister"

corporation to Hyatt. Plaintiffs alleged that they negotiated with Marmon's subsidiary, MTN, to service RoboBars installed in Hyatt-managed hotels in the United States. In December 1985, Hyatt requested a proposal from plaintiffs to provide RoboBars in 10 Hyatt-managed hotels, subject to establishing a relationship with Marmon. In March 1986, plaintiffs and Marmon agreed that MTN would install and maintain the RoboBars in Hyatt-managed hotels. Thereafter, plaintiffs obtained a contract to provide RoboBars in 4 of the 10 Hyatt-managed hotels, one of which was the HRC. Plaintiffs alleged that they reasonably expected to receive contracts for the six other Hyatt-managed hotels, as well as future business from other Hyatt-managed hotels.

Hyatt filed motions to dismiss plaintiffs' fraud count pursuant to section 2—619 and to dismiss plaintiff's tortious interference count pursuant to both sections 2—615, for failure to state a claim, and 2—619, on the grounds that plaintiffs' principal knew that Hyatt acted as agent for the owners of Hyatt-managed hotels and therefore Hyatt was privileged to act in its principals' interests in recommending or not recommending the installation of RoboBars, and plaintiffs failed to show that the privilege was inapplicable.

On February 10, 1998, the trial court, Judge Loretta Douglas presiding, denied Hyatt's motion to dismiss plaintiffs' fraud claim pursuant to section 2—619 and granted Hyatt's motion to dismiss plaintiffs' claim for tortious interference. In denying plaintiffs' motion for reconsideration, the trial court invited plaintiffs to amend their count for tortious interference with prospective business relations.

On March 12, 1998, Hyatt filed a motion for summary judgment on plaintiffs' fraud count. Hyatt argued that by reason of the federal litigation plaintiffs were barred from seeking damages: (1) related to the preparation of "various proposals for the addition of new RoboBar units at the Hotel and other Hyatt properties"; (2) for "loss of credibility and injury to its reputation in the hotel industry"; and (3) for "the benefit of installations of RoboBars at other Hyatt hotels."

On July 10, 1998, the trial court entered an order granting Hyatt's motion for summary judgment on the issues of, *inter alia*, expenses and attorney fees incurred in the federal litigation. The trial court denied Hyatt's motion as to plaintiffs' claim for "benefit of the bargain damages" arising from Hyatt's alleged fraud for depriving plaintiffs of an alleged contract to install RoboBars in five hotels instead of the four actually installed.

On December 9, 1998, plaintiffs filed their second amended complaint. In that pleading, plaintiffs reiterated the allegations of their first amended complaint, except for those allegations the trial court

construed as a claim that the alleged fraud deprived plaintiffs of the benefit of an alleged contract to install five hotels instead of the four actually installed.

Hyatt filed a motion to dismiss plaintiffs' second amended complaint; plaintiffs filed a response and Hyatt filed a reply.

On February 10, 1999, the trial court granted Hyatt's motion to dismiss count II of plaintiffs' second amended complaint and also granted Hyatt's motion for summary judgment on count I. Plaintiffs filed a notice of appeal from: (1) the trial court's memorandum and order entered September 18, 1997, granting in part Hyatt's motion to dismiss pursuant to section 2—619 with respect to count I of the complaint and granting Hyatt's motion to dismiss pursuant to section 2—619 with respect to count II of the complaint; (2) the order entered February 10, 1998, granting Hyatt's motion to dismiss pursuant to sections 2—615 and 2—619 with respect to count II of the first amended complaint, and granting summary judgment in favor of Hyatt with respect to count I of the first amended complaint; (3) the order entered February 10, 1999, granting Hyatt's motion to dismiss pursuant to sections 2—615 and 2—619 with respect to count II of the second amended complaint; and (4) the order entered July 10, 1998, granting summary judgment in favor of Hyatt regarding damages with regard to count I of the first amended complaint.

Hyatt filed a cross-appeal from: (1) the trial court's order entered on March 10, 1997, which denied Hyatt's motion to dismiss plaintiffs' original complaint for failure to state a cause of action pursuant to section 2—615; (2) the trial court's order of June 26, 1997, denying Hyatt's motion to dismiss count III of plaintiffs' original complaint pursuant to section 2—619 and ordering Hyatt to answer that count; and (3) that portion of the order entered September 18, 1997, denying in part Hyatt's motion to dismiss count I of the original complaint pursuant to section 2—619.

Thereafter, Hyatt filed a motion in this court to strike and dismiss portions of plaintiffs' notice of appeal; to declare its own cross-appeal moot; and to limit the appeal to the issues decided by the order entered on February 10, 1999. This motion was taken with the case.

## OPINION

Initially, plaintiffs contend that the trial court erred granting summary judgment in favor of Hyatt on plaintiffs' claim for attorney fees and costs incurred in the prior federal litigation against Kato. This is an issue of first impression.

Our standard of review of the circuit court's decision to grant summary judgment is *de novo. Mack v. Ford Motor Co.*, 283 Ill. App.

3d 52, 669 N.E.2d 608 (1996). On appeal from the granting of summary judgment, the only issue before this court is whether all the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1994); *Jewish Hospital v. Boatmen's National Bank*, 261 Ill. App. 3d 750, 754, 633 N.E.2d 1267, 1272 (1994). Summary judgment is to be granted only where the evidence, construed most strongly against the moving party, establishes clearly and without doubt the movant's right to relief. *Purtill v. Hess*, 111 Ill. 2d 229, 489 N.E.2d 867 (1986).

Citing *Sorenson v. Fio Rito*, 90 Ill. App. 3d 368, 371, 413 N.E.2d 47, 51 (1980), plaintiffs argue that attorney fees incurred in the federal litigation against Kato are recoverable against Hyatt on the theory that "a wrongdoer is liable for all of the ordinary and natural consequences of his act." Plaintiffs contend that they have satisfied the following elements as required by *Sorenson*: (1) they incurred attorney fees in a prior litigation ($700,000); (2) the prior litigation was against a third party, Kato (the trial court ruled that plaintiffs could maintain their action against Hyatt as separate and apart from its agency relationship with Kato); and (3) plaintiffs were involved in such litigation because of the tortious act of Hyatt in the present litigation (Hyatt proposed the fraudulent one-year test for the RoboBars). See *Sorenson*, 90 Ill. App. 3d at 372.

*Sorenson* is factually distinguishable. There, the plaintiff, Sorenson, contacted the defendant, Fio Rito, an attorney, about probating her husband's estate shortly after his death. Fio Rito represented that he would "take care of everything," and Sorenson gave Fio Rito relevant estate and tax documents. After a few years, Sorenson still had no resolution of the estate. Sorenson contacted Fio Rito who admitted that Sorenson would have to pay some tax penalties because of the delay, but nevertheless failed to attend to her estate matters. Sorenson ultimately contacted another attorney to handle the matter, incurring attorney fees in the amount of $1,500, and was required to pay tax penalties in excess of $6,400. Thereafter, Sorenson filed a malpractice action against Fio Rito seeking damages incurred as a result of his failure to timely file her estate matter. The jury awarded damages to Sorenson in the form of penalties, interest and attorney fees. This court affirmed the award, notwithstanding Fio Rito's argument that the "American Rule" prohibited the recovery of such damages absent a statute allowing such expenses on the grounds that " 'one should not be penalized for merely defending or prosecuting a lawsuit.' " *Sorenson*, 90 Ill. App. 3d at 372, quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 18 L. Ed. 2d 475, 478, 87 S. Ct. 1404, 1407 (1967). This court stated:

"The plaintiff here is not attempting to recover the attorneys' fees she expended in bringing this lawsuit. Rather, *she seeks to recover losses incurred in trying to obtain refunds of tax penalties which were assessed against her solely as a result of the defendant's negligence.*" (Emphasis added). *Sorenson*, 90 Ill. App. 3d at 372.

■ Here, the record shows that, after a trial in federal court, Roboserve was awarded damages for certain losses resulting from Kato's breach of contract under a theory of *respondeat superior*, finding that Kato was vicariously liable for the actions of Hyatt, its agent, acting within the scope of its agency for Kato. Unlike *Sorenson*, the record in the present case does not show that Roboserve was assessed any penalties by a government body for any action resulting from Kato's negligence. Plaintiffs' alternative argument that Hyatt acted *outside the scope of its agency to Kato* is inconsistent with its theory in the federal litigation. Logically, plaintiffs could not be entitled to attorney fees for pursuing litigation against the principal where the principal was *not vicariously liable for the actions of its agent.*

With reference to the American Rule, our supreme court has held:
"While it is recognized that where the natural and proximate consequences of a wrongful act have been to involve the plaintiff in litigation with others, there may be a recovery in damages against the author of such act, measured by the reasonable expenses incurred in such litigation, [citation] yet the rule is equally well established that where an action based on the same wrongful act has been prosecuted by the plaintiff against the defendant to a successful issue, he can not in a subsequent action recover, as damages, his costs and expenses in the former action." *Ritter v. Ritter*, 381 Ill. 549, 554-55, 46 N.E.2d 41 (1943).

Hyatt points to several cases outside of our jurisdiction where courts denied the extension of the American Rule in circumstances similar to those presented here. See, *e.g.*, *Golden West Baseball Co. v. Talley*, 232 Cal. App. 3d 1294, 284 Cal. Rptr. 53 (1991) (city manager cannot be sued under the "tort of another" doctrine to recover attorney fees incurred by professional baseball club in a breach of contract action against the city, where it is not shown that the city manager was not acting on behalf of the city); *Miller Hydro Group v. Popovitch*, 851 F. Supp. 7, 14-15 (D. Me. 1994) (holding "tort of another" doctrine did not allow buyer of hydroelectric power to recover litigation costs in state law fraud claim which costs were incurred in earlier federal action against seller).

Here, the record shows that all of the facts relevant to plaintiffs' case were completed and known by all parties as of 1992, and that plaintiffs failed to raise any new issues with the initiation of the present action in our state court. Plaintiffs do not explain their failure to

raise the issue of attorney fees during federal court proceedings while that action was pending. Although not binding on this court, we find the decisions of the Maine and California courts persuasive and similarly decline to extend the American Rule in light of the facts and circumstances of this case.

■ Next, plaintiffs contend that the trial court erred in dismissing their claim for tortious interference with prospective business relations pursuant to section 2—615. To recover on a claim for tortious interference with prospective business relations, a plaintiff must plead and prove:

"(1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511, 568 N.E.2d 870, 878 (1991).

Plaintiffs argue that their complaint set forth a reasonable business expectancy of RoboBar contracts with third parties in the form of Hyatt-managed hotels; that these hotels were sufficiently specifically identified as a class; that Hyatt promised expanded business to plaintiffs and made plaintiffs "jump through hoops" and failed to deliver on its promised business.

■ We find that the trial court properly dismissed plaintiffs' claim for interference with prospective business relations. The record shows that plaintiffs failed to: (1) specifically identify another Hyatt hotel from which they expected to receive a contract; (2) allege that any other clearly identified group was "contemplating prospective contractual arrangements" with plaintiffs; and (3) allege any specific acts of interference. See *Parkway Bank & Trust Co. v. City of Darien*, 43 Ill. App. 3d 400, 403, 357 N.E.2d 211 (1976). A defendant cannot "interfere" with its own prospective relationships with a plaintiff. *IK Corp. v. One Financial Place Partnership*, 200 Ill. App. 3d 802, 819, 558 N.E.2d 161, 172 (1990).

Plaintiffs further contend that the trial court erred in dismissing its claim for tortious interference with prospective business relations pursuant to section 2—619. The trial court found that plaintiffs failed to allege any facts sufficient to demonstrate that Hyatt was not acting in the interests of its principals in recommending or not recommending the installations of RoboBars at any Hyatt-managed hotel and that plaintiffs were barred by *res judicata* from relitigating damage claims that could have been litigated in the federal case.

■ Plaintiffs assert that they do not have the burden to allege that

Hyatt lacked the justification or privilege to interfere in the business of its principals. Plaintiffs argue that Hyatt is required to allege its privilege as an affirmative defense. Plaintiffs further argue that Hyatt acted with an "improper purpose" in furtherance of its own interests and not the interests of the other Hyatt-managed hotels in interfering with plaintiffs' prospective business relations with other Hyatt-managed hotels.

Where the complaint establishes the existence of a privilege, the plaintiff must plead and later prove that the defendant acted unjustifiably or inconsistent with such privilege. *Roy v. Coyne*, 259 Ill. App. 3d 269, 630 N.E.2d 1024 (1994); *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 545 N.E.2d 672 (1989). Corporate officers, directors, shareholders and agents are normally privileged against claims that their activities interfered in a third party's relationships with their principals. *Swager v. Couri*, 77 Ill. 2d 173, 395 N.E.2d 921 (1979). To overcome the privilege, plaintiffs must allege or prove that a defendant acted in its own interests and contrary to the interests of its principal, or engage in conduct totally unrelated or antagonistic to the interest giving rise to the privilege.

In support of its section 2—619 motion, Hyatt submitted the sworn testimony of plaintiffs' chief executive and operating officer, William Fattal, wherein Fattal admitted that he knew that: (1) Hyatt was acting as the agent of the various hotels' owners in making recommendations regarding mini-bars; and (2) owner approval of RoboBar installations was required. Plaintiffs failed to allege that Hyatt acted in its own interest or against the interest of Kato. Thus, the trial court properly dismissed count II of plaintiffs' complaint pursuant to section 2—619.

For the reasons set forth above, we therefore affirm the judgment of the trial court.

Affirmed.

BUCKLEY and O'BRIEN, JJ., concur.