350 S.C. 7 (2002)
564 S.E.2d 324
UNITED EDUCATIONAL DISTRIBUTORS, LLC, Appellant,
v.
EDUCATIONAL TESTING SERVICE, Respondent.
No. 3436.
Court of Appeals of South Carolina.
Heard October 1, 2001.
Decided January 22, 2002.
Rehearing Denied June 19, 2002.
*10 Bruce R. Hoffman, Beaufort, for appellant.
William B. Harvey, III, of Harvey & Battey, Beaufort; and Bruce M. Berman and Michael D. Leffel, both of Wilmar, Cutler & Pickering, of Washington, D.C., for respondent.
CONNOR, J.
United Educational Distributors, LLC ("UED") appeals the dismissal of its cause of action for "tortious interference with prospective economic advantage." We affirm.

FACTS/PROCEDURAL BACKGROUND
Educational Testing Services ("ETS"), a nonprofit corporation headquartered in Lawrenceville, New Jersey, administers, scores, and prepares testing materials for, among others, the College Level Examination Program ("CLEP"). UED sells study aids for the CLEP test, which it markets primarily to military personnel.
On October 9, 1998, UED filed its original complaint in the Court of Common Pleas for the County of Beaufort alleging ETS wrongfully interfered with UED's present and future sales contracts of its study materials. Essentially, UED alleged two tort causes of action: (1) intentional interference with present contractual relationships and (2) intentional interference with prospective economic advantage.[1] UED prayed for actual and punitive damages of not less than $1,500,000.00.
*11 On November 12, 1998, the case was removed to federal district court and UED subsequently moved to remand the case. Thereafter, on December 18, 1998, ETS filed its first motion to dismiss UED's action pursuant to Fed.R.Civ.P. 12(b)(6). UED filed its return to this motion and its first amended complaint on January 5, 1999, to which ETS moved to dismiss the amended complaint on January 14, 1999. On January 21, 1999, the action was remanded to the Beaufort County Court of Common Pleas.
ETS filed its first motion to dismiss UED's action pursuant to Rule 12(b)(6), SCRCP, on February 17, 1999.[2] After a hearing on ETS's motion, Judge Kemmerlin, Master in Equity and Special Circuit Judge for the Court of Common Pleas of Beaufort County, filed his order on July 12, 1999, requiring UED to re-plead its first cause of action and allowing UED to re-plead its second cause of action for intentional interference with prospective contractual relations.
UED filed its second amended complaint on July 29, 1999. For the second cause of action, UED named several people from ETS specifically and alleged they participated in ETS's "concerted effort to prevent [UED] from obtaining new business." However, UED failed to allege that ETS interfered with any specific contracts it had received or was certain to enter into. Rather, UED alleged that it "would have continued to receive responses from at least 10% of the lead cards [it] mailed." Paragraphs fourteen and fifteen of UED's second amended complaint state:
14. Businesses selling products on military bases are prohibited from selling door to door. Instead, with addresses only obtained from the military through the Freedom of Information Act (no names or telephone numbers are provided), [UED] sends out lead cards (in the Beaufort area, normally 4 mailings a year, 1500 cards mailed at a time) to all the addresses inviting calls if the recipients have an interest in the product being sold ( [UED] does not have a store front, it is a direct sales company whose business is *12 completely dependent on generating new customers through these lead cards). As a result of [ETS's] interference, [UED] has seen the average expected response (per past history) to its lead cards in the Beaufort area drop from 10% in 1996 and 1997 to virtually none in 1998 (when the interference began) and none in 1999.
15. [UED], not having names or phone numbers, couldn't do follow-up to see why they have not been receiving the normal percentage of lead card responses, as they had in the past (i.e. [UED] has no way of knowing who didn't respond and why, they only know they don't receive responses anymore). Meanwhile, the only change in circumstance[s] from 1996 to present, and therefore the only possible cause for this quantifiable, precipitous drop in responses/business (to nothing), is [ETS's] interference.
ETS moved to dismiss UED's second amended complaint on August 16, 1999. UED responded with its return to ETS's motion to dismiss, which was followed on October 20, 1999 by ETS's "memorandum of points and authorities in further support of its motion to dismiss" the second amended complaint. UED again filed a return to ETS's addition to its motion.
On November 30, 1999, Judge Kemmerlin filed his order striking UED's second cause of action in its second amended complaint but allowing the first cause of action, stating: "I believe the First Cause of Action meets the bare bones requirements necessary to state a cause of action for `Tortious Interference With Present Contractual Relations.'" (emphasis in original). On December 20, 1999, UED filed notice of appeal from Judge Kemmerlin's order that struck UED's claim for intentional interference with prospective contractual relations.[3]

*13 DISCUSSION
UED argues it sufficiently pled its cause of action for intentional interference with prospective contractual relations in its second amended complaint. Although UED has alleged facts sufficient to put ETS on notice of a cause of action generally, it has failed to plead any specific contracts to put ETS on notice of what, with some particularity, it must defend against in an intentional interference action.
A ruling on a motion to dismiss a claim pursuant to Rule 12(b)(6), SCRCP, must be based solely on the allegations set forth on the face of the complaint. The motion will not be sustained if the facts alleged and the inferences reasonably deducible therefrom would entitle the plaintiff to relief on any theory of the case. Washington v. Lexington County Jail, 337 S.C. 400, 404, 523 S.E.2d 204, 206 (Ct.App.1999); McCormick v. England, 328 S.C. 627, 632-33, 494 S.E.2d 431, 433 (Ct.App.1997). "[A] judgment on the pleadings is considered to be a drastic procedure by our courts." Russell v. City of Columbia, 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991). Therefore, pleadings in a case should be construed liberally and the trial court and this Court must presume all well pled facts to be true so that substantial justice is done between the parties. See Justice v. Pantry, 330 S.C. 37, 42, 496 S.E.2d 871, 874 (Ct.App.1998). "The cause of action should not be struck merely because the court doubts the plaintiff will prevail in the action." McCormick, 328 S.C. at 633, 494 S.E.2d at 434.
*14 South Carolina only recently recognized the tort of intentional interference with prospective contractual relations in Crandall Corp. v. Navistar Int'l Transp. Corp., 302 S.C. 265, 395 S.E.2d 179 (1990). The elements of the cause of action are (1) the intentional interference with the plaintiff's potential contractual relations, (2) for an improper purpose or by improper methods, and (3) causing injury to the plaintiff. Brown v. Stewart, 348 S.C. 33, 55, 557 S.E.2d 676, 688 (Ct.App.2001); Love v. Gamble, 316 S.C. 203, 214, 448 S.E.2d 876, 882 (Ct.App.1994).[4] "As an alternative to establishing an improper purpose, the plaintiff may prove the defendant's method of interference was improper under the circumstances." Crandall, 302 S.C. at 266, 395 S.E.2d at 180. Generally, there can be no finding of intentional interference with prospective contractual relations if there is no evidence to suggest any purpose or motive by the defendant other than the proper pursuit of its own contractual rights with a third party. Southern Contracting, Inc. v. H.C. Brown Constr. Co., 317 S.C. 95, 102, 450 S.E.2d 602, 606 (Ct.App.1994).
Upon a review of our limited South Carolina precedent, a cause of action for intentional interference with prospective contractual relations generally stands following the loss of an identifiable contract or expectation. See, e.g., Crandall, 302 *15 S.C. at 267-68, 395 S.E.2d at 180-81 (alleged interference with a verbal parts and labor supply contract); Love, 316 S.C. at 205-07, 448 S.E.2d at 877-78 (alleged interference with pickle supply contract); Williams v. Riedman, 339 S.C. 251, 529 S.E.2d 28 (Ct.App.2000) (asserted as a counterclaim by employer in a wrongful termination case where the former employee allegedly solicited the employer's current clients); Edens & Avant Inv. Props., Inc. v. Amerada Hess Corp., 318 S.C. 134, 456 S.E.2d 406 (Ct.App.1995) (alleging interference with an option contract; nevertheless, the action is dismissed because plaintiff has no right to recover damages); Southern Contracting, 317 S.C. at 96-97, 450 S.E.2d at 603-04 (alleged interference with a subcontracting agreement); Gailliard v. Fleet Mortgage Corp., 880 F.Supp. 1085 (D.S.C.1995) (alleged interference with a mortgage contract dismissed by summary judgment motion). That is, "Crandall and other authority discussing this tort usually require the aggrieved party to have been unsuccessful in acquiring an expected contract due to a third party's intentional and wrongful actions." Egrets Pointe Townhouses Prop. Owners Ass'n v. Fairfield Cmtys., Inc., 870 F.Supp. 110, 116 (1994).
The plaintiff must actually demonstrate, at the outset, that he had a truly prospective (or potential) contract with a third party. This does not require plaintiff to prove the tort in his initial pleadings; rather, the allegations must present facts that give rise to some reasonable expectation of benefits from the alleged lost contracts. This requirement mirrors the analysis of other jurisdictions.
In New Jersey, "[w]hat is actionable is the luring away, by devious, improper and unrighteous means, of the customer of another." Printing Martr-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 563 A.2d 31, 36 (1989). "A complaint based on tortious interference must allege facts that show some protectable righta prospective economic or contractual relationship. Although the right need not equate with that found in an enforceable contract, there must be allegations of fact giving rise to some `reasonable expectation of economic advantage.'" Id. at 37, 563 A.2d 31 (emphasis added); see Democratic State Comm. v. Bebchick, 706 A.2d 569, 573 (D.C.1998) ("In order to survive a motion to dismiss on a claim of intentional interference with prospective economic advantage a plaintiff must *16 allege business expectancies, not grounded on present contractual relationships, but which are commercially reasonable to anticipate."); Walker v. Sloan, 137 N.C.App. 387, 529 S.E.2d 236, 242 (2000) ("[T]o state a claim for wrongful interference with prospective advantage, the plaintiffs must allege facts to show that the defendants acted without justification in inducing a third party from entering into a contract with them which contract would have ensued but for the interference."); see also Spartan Equip. Co. v. Air Placement Equip. Co., 263 N.C. 549, 140 S.E.2d 3, 11 (1965) (Plaintiff had not entered a contract with its prospective customer; therefore, Plaintiffs cause of action for malicious interference with a proposed or prospective contract did not survive a demurrer ore tenus because Plaintiff failed to "allege that its prospective sale [to the potential customer] would have been consummated but for the malicious interference of defendant's agent."); Everest Props. II, L.L.C. v. Am Tax Credit Props. II, L.P., 2000 WL 145757 (Del.Super.Ct.2000) (pleading loss of tender offers for corporate stock allegedly thwarted by defendants is sufficient to state a cause of action for tortious interference).
"The Pennsylvania Supreme Court has defined `prospective contractual relation' as `something less than a contractual right, something more than a mere hope.' In short, it is `a reasonable probability' that contractual relations will be realized." SNA, Inc. v. Array, 51 F.Supp.2d 554, 567 (E.D.Pa. 1999) (emphasis added); Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (1997) ("[T]he Pennsylvania Supreme Court requires that there be an objectively reasonable probability that a contract will come into existence."). As such, mere business competition where the defendant takes no "purposeful action" to cause the plaintiff financial harm is not actionable. SNA, 51 F.Supp.2d at 567.
The reasonable expectation need not be based on an enforceable contract. Landry v. Hornstein, 462 So.2d 844, 846 (Fla.Dist.CtApp.1985) (The reasonable expectation need not be based on an enforceable contract "if the jury finds that an understanding between the parties would have been completed had the defendant not interfered."); see Printing Martr-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 563 A.2d 31, 36 (1989). Rather, plaintiffs must allege "either a business relation with specific third parties or with an identifiable *17 prospective class of third persons." Parkway Bank & Trust Co. v. City of Darien, 43 Ill.App.3d 400, 2 Ill.Dec. 234, 357 N.E.2d 211, 214 (1976). Thus, in Fredrick v. Simmons Airlines, Inc., 144 F.3d 500, 503 (7th Cir.1998) (applying Illinois law), where plaintiff failed to identify any third parties with whom he had a valid expectation to conduct business, the court did not allow the tortious interference action to stand. In fact, the court found plaintiff "failed to allege any reasonable expectation of a business relationship at all" since "[h]e does not claim that he had been offered a job by any other airline, or even that he had interviewed or applied for such positions" to create a sufficient expectancy of employment. Id.; accord Citylink Group, Ltd. v. Hyatt Corp., 313 Ill.App.3d 829, 246 Ill.Dec. 218, 729 N.E.2d 869, 877 (2000) (Plaintiffs' claim for the tort was properly dismissed because "[t]he record shows that plaintiffs failed to: (1) specifically identify another Hyatt hotel from which they expected to receive a contract; (2) allege that any other clearly identified group was `contemplating prospective contractual arrangements' with plaintiffs; and (3) allege any specific acts of interference."); Quail Ridge Assocs. v. Chem. Bank, 162 A.D.2d 917, 558 N.Y.S.2d 655 (N.Y.App.Div.1990) (affirming dismissal of plaintiff's cause of action for intentional interference with contract and precontractual business relations involving loan agreement where pleadings failed to contain a reference to any particular contract with a third party).
The agreement must be a close certainty; thus, a mere offer to sell, for example, does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship. Landry, 462 So.2d at 846. Likewise, the mere hope of a contract is insufficient. See Williams v. Weaver, 145 Ill.App.3d 562, 99 Ill.Dec. 412, 495 N.E.2d 1147, 1152 (1986) (employment contract), cited in Jones v. Sabis Educ. Sys., Inc., 52 F.Supp.2d 868, 881-82 (1999) (plaintiff, an at-will employee who was discharged, did not have an expectation that his employment relationship would continue); accord Fredrick, 144 F.3d at 503.
These contracts cannot be speculative. In SNA, a Pennsylvania District Court found mere allegations of losses *18 from a general list of unknown customers does not sufficiently plead the tort.
Plaintiffs also argue that through their internet sites, defendants interfere with plaintiffs' prospective contracts because prospective customers will see the sites and be dissuaded from ever contacting SNA. This conclusory speculation certainly cannot form the basis of an action, because there is no evidence of a reasonable probability that a contract will be realized with the hypothetical internet user, nor any of economic loss to plaintiff caused by defendants.

SNA, 51 F.Supp.2d at 568 (emphasis added). Likewise, in Minnesota Mining & Mfg. Co. v. Graham-Field, Inc., 1997-2 Trade Cases P 71882, 1997 WL 166497 (1997), a New York District Court dismissed defendant's counterclaim because it failed to state its alleged losses with specificity. The court stated:
GFI fails to allege a particular customer relationship with which plaintiff interfered. Rather, GFI alleges generally that as a result of [plaintiff's] actions, "certain of GFI's customers have brought their business elsewhere." This is insufficient to sustain GFI's tortious interference with prospective economic advantage counterclaim, and that counterclaim must be dismissed.
Id. at *7.
Here, UED has redrafted its complaint twice and still has not alleged that it had a reasonable probability of entering into a specific contract but for the interference of ETS. Rather, UED merely asserts, based on past experience, it would have received a response from approximately 10% of its mailings. Further, UED asserts that everyone on the military bases it tried to serve constitutes a potential customer and, therefore, prospective contracts. Even with these alleged potential customers, however, UED acknowledges it "has no way of knowing who didn't respond and why." Moreover, UED does not allege that any of its past customers provided repeat business. Therefore, UED has failed to plead any potential contract was thwarted by any alleged tortious conduct on the part of ETS.
*19 For the foregoing reasons, the decision of the circuit court dismissing UED's action for intentional interference with prospective contractual relations pursuant to Rule 12(b)(6) is
AFFIRMED.
HEARN, C.J. and GOOLSBY, J., concur.
NOTES
[1] Although the trial court identified this action as "tortious interference with prospective economic advantage," South Carolina has labeled this tort "intentional interference with prospective contractual relations." See Crandall Corp. v. Navistar Int'l Transp. Corp., 302 S.C. 265, 395 S.E.2d 179 (1990). Because the parties use the two terms interchangeably, we will, for consistency purposes, analyze UED's cause of action as that of intentional interference with prospective contractual relations. This decision does not affect the substance of our analysis. See 45 Am.Jur.2d Interference § 36 (1999) ("The torts of intentional interference with contractual relations, with lawful business, and with prospective business advantage are closely related.... The general wrong involved in each tort consists of intentional and improper methods of diverting or taking away ongoing or prospective business or contractual rights from another, which methods are not within the privilege of fair competition.").
[2] This motion is dated February 6, 1999; however, in ETS's additional memorandum in support of its motion to dismiss UED's second amended complaint, ETS states it did not move to dismiss the first amended complaint until February 17, 1999
[3] Subsequently, UED filed its third amended complaint clarifying its first cause of action and including its second cause of action for intentional interference with prospective contractual relations. Nevertheless, Judge Kemmerlin's last order filed February 11, 2000, addressed only UED's second amended complaint. Of import in this appeal, the judge found UED's allegations for intentional interference with prospective contractual relations "fail to satisfy the requirements of South Carolina law or my earlier Order" because UED failed to allege specific customers and contracts lost due to ETS's actions or any knowledge of the same by ETS. The judge cited this lack of proof apparent in Paragraphs seven and eight of UED's second amended complaint. Thus, the judge concluded:

[ETS] should not be required to attempt to answer [UED's] Second Amended Complaint without knowing the particular contracts (if any) that [UED] claims have been breached and of which [ETS] had knowledge. [UED] is the only party in a position to identify such contracts, and [ETS] cannot be made to guess at the contracts that [UED] may have in mind.
Judge Kemmerlin noted in a footnote to the above referenced citation that: "[i]f discovery reveals other contracts then [UED] can amend [its] complaint to include them." By letter dated February 15, 2000, UED inquired from Judge Kemmerlin why he had based his latest order on the second amended complaint. In a handwritten note on this letter, the judge responded to "[j]ust to keep up with it, I think you[, UED,] should now prepare a pleading complying with my Order of 2/11/2000."
Thereafter, Judge Kemmerlin recused himself on June 23, 2000.
[4] See also Landry v. Hornstein, 462 So.2d 844, 846 (Fla.Dist.Ct.App. 1985); Restatement (Second) of Torts § 766B (1989 & Supp.2001). A number of other jurisdictions, on the other hand, generally express the tort with four elements, requiring a plaintiff to plead and prove:

(1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference.
Fellhauer v. City of Geneva, 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870, 878 (1991); accord Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir.1994); Preyer v. Dartmouth Coll., 968 F.Supp. 20, 26 (1997); SNA, Inc. v. Array, 51 F.Supp.2d 554, 567 (E.D.Pa.1999); DeBonaventura v. Nationwide Mut. Ins. Co., 428 A.2d 1151, 1153 (Del.1981); Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 668 N.E.2d 333, 338 (1996); Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 563 A.2d 31, 37 (1989); see generally Richard D. English, Annotation, Liability for Tortious Interference with Prospective Contractual Relations Involving Sale of Business, Stock, or Real Estate, 71 A.L.R.5th 491 (1999).