United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 19-5224**

**September Term, 2020**

FILED ON: DECEMBER 18, 2020

BRANDON MILL, LLC AND H. PACE BURT, JR.,
APPELLANTS

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR FIRST NBC BANK,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-02308)

Before: WILKINS and RAO, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

**J U D G M E N T**

This case was considered on the record from the United States District Court for the District of Columbia and the briefs and oral argument of the parties. The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). It is

**ORDERED AND ADJUDGED** that the decision of the district court be **AFFIRMED**.

I

Brandon Mill, LLC, and H. Pace Burt, Jr., ("Plaintiffs") appeal the district court's denial of leave to amend their complaint. The district court denied leave to amend on the ground that the proposed amended complaint would fail to state a claim under Federal Rule of Civil Procedure 12(b)(6), and thus amendment was futile under Federal Rule of Civil Procedure 15(a). *See Brandon Mill, LLC v. FDIC*, 2019 WL 3458688, at *7–10 (D.D.C. July 31, 2019). We agree that none of Plaintiffs' claims in their proposed amended complaint states a claim under Rule 12(b)(6) and thus affirm the district court.

Because this case was decided below at the pleading stage, the facts are recounted as Plaintiffs have pled them. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained

in the complaint."). In 2015, Burt formed several LLCs for the purpose of engaging in a real estate development project that would convert an historic textile mill in South Carolina into loft apartments ("the project"). The LLC structure is critical to this case. Plaintiff Brandon Mill, LLC ("Mill Owner") was to be the owner of the property and the project. Mill Owner had two members: Brandon Mill Investor, LLC, and Brandon Mill Tenant, LLC ("Mill Tenant"). Mill Tenant, in turn, was comprised of Brandon Mill Manager, LLC ("Mill Manager") and First NBC Historic Tax Partners, LLC ("Tax Partners"), a wholly owned subsidiary of First NBC Bank. In April 2017, however, Louisiana regulators closed First NBC Bank. The Federal Deposit Insurance Corporation ("FDIC") became the receiver for the bank and thus succeeded to the obligations of Tax Partners.

As relevant here, the FDIC could exercise Tax Partners' contractual right to consent to any refinancing of the project, but consent could not "be unreasonably withheld." A86 (defining "Consent of the Investor Member" to "mean[] the prior written consent or approval of [Tax Partners], which consent may not be unreasonably withheld"). In the spring of 2017, Burt negotiated terms to refinance the project with Arbor Commercial Funding. Over the following months, he repeatedly requested that the FDIC consent to the refinancing with Arbor. The FDIC, however, did not consent, despite acknowledging receiving the requests, which caused the refinancing opportunity with Arbor to slip away. Plaintiffs became suspicious that the FDIC, which was trying to liquidate First NBC's assets in its capacity as receiver, had withheld its consent to gain leverage and extract a higher price from Plaintiffs to buy out Tax Partners' share in Mill Tenant. In October 2017, Plaintiffs secured alternate refinancing, which was less favorable than the terms of the Arbor financing would have been. When they approached the FDIC for its consent, the FDIC explicitly tied its consent to a buyout offer for Tax Partners. The FDIC agreed to this proposed refinancing only after Burt threatened legal action.

Plaintiffs brought five claims arising out of the FDIC's failure to consent to the Arbor loan, and they later attempted to add a sixth, all of which are now before this court. The district court rebuffed Plaintiffs' attempt to amend their complaint on the ground that their amended complaint would not state a claim and could not survive a Rule 12(b)(6) motion. *Brandon Mill*, 2019 WL 3458688, at *7–10. We typically review denials of leave to amend for abuse of discretion, but where, as here, such denial is based on "perceived deficiencies … under Rule[] 12(b)(1) [or] 12(b)(6)," we review the district court's determination de novo, asking whether Plaintiffs' amended complaint would pass muster under 12(b)(6). *Osborn v. Visa Inc.*, 797 F.3d 1057, 1062 (D.C. Cir. 2015). In this case, the district court correctly held that it would not.

II

Plaintiffs' various claims fail, at bottom, because Plaintiffs have no direct relationship with Tax Partners and therefore lack the requisite legal relationship to plead their claims. Tax Partners, and now the FDIC, was a party to only one relevant contract: the Tenant Operating Agreement, an agreement between Tax Partners and Mill Manager. Neither plaintiff in this action is a party to that agreement.

*First*, the district court correctly held that Plaintiffs' two claims under South Carolina corporate law, which governs the relevant entities, do not state a claim under Rule 12(b)(6). Plaintiffs allege that the FDIC breached its duty of loyalty and its duty of care. But on the facts pled, the FDIC owed Plaintiffs no such duties because Tax Partners owed Plaintiffs no such duties. Mill Manager, not Tax Partners, was the manager of Mill Tenant's day-to-day business activities. South Carolina law provides that a non-managing member of an LLC, such as Tax Partners, "owes no duties to the company or to the other members solely by reason of being a member." S.C. CODE ANN. § 33-44-409(h)(1). And even if, as Plaintiffs argue, Tax Partners nonetheless owed *some* corporate-law duties to *some* entity, they would be owed to the LLC itself, Mill Tenant, or Tax Partners' fellow LLC member, Mill Manager. Tax Partners simply owed no corporate law duties to Burt or Mill Owner, the plaintiffs here. Plaintiffs thus fail to state a corporate law claim.

*Second*, Plaintiffs forfeited their argument that the FDIC violated a common law fiduciary duty by failing to raise it. *See Herron v. Fannie Mae*, 861 F.3d 160, 165 (D.C. Cir. 2017). Plaintiffs discuss fiduciary duty only glancingly, and exclusively in the context of fiduciary duties owed under South Carolina corporate law, not common law. Appellants' Br. 24–26; Appellants' Rep. Br. 4.

*Third*, the district court correctly held that Plaintiffs fail to state a breach of contract claim under Rule 12(b)(6). That they were not in privity of contract with Tax Partners is fatal to this claim. *See Fabian v. Lindsay*, 765 S.E.2d 132, 139 (S.C. 2014) ("Generally, one not in privity of contract with another cannot maintain an action against him in breach of contract.") (cleaned up). Tax Partners signed one agreement, the Tenant Operating Agreement. That agreement alone contained its obligation not to withhold unreasonably its consent to refinance the project, and neither plaintiff was a party to it. Plaintiffs press a number of arguments for why they should nonetheless be allowed to sue, such as the fact that Burt is mentioned in the Tenant Operating Agreement (though not a party to it), or that the Tenant Operating Agreement mentions other contracts to which Plaintiffs are parties. But Plaintiffs cite no case law or any other authority supporting a right to sue for breach of contract based on these facts, and as a federal tribunal, we decline to create new South Carolina contract law.

*Fourth*, the district court correctly held that Plaintiffs fail to state a negligence claim. Establishing a cause of action for negligence under South Carolina law requires three elements: "(1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *J.T. Baggerly v. CSX Transp. Inc.*, 635 S.E.2d 97, 101 (S.C. 2006). Plaintiffs cannot plausibly plead that Tax Partners owed either of them a duty of care. They claim first that Tax Partners owed such a duty because it had a vested interest in the success of the Brandon Mill project. In narrow instances under South Carolina law, "a tortfeasor may be liable for injury to a third party arising out of the tortfeasor's contractual relationship with another, despite the absence of privity between the tortfeasor and the third party." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 644 S.E.2d 43, 46 (S.C. 2007). South Carolina courts, however, determine whether such liability exists on a case-by-case basis, considering "public policy considerations." *Id.* at 47; *see also id.*

3

(declining to find a duty between secured creditor and third party, in part because allegedly injured party was "sophisticated" and engaged in "a calculated business decision"). Here, Plaintiffs cite no authority to indicate why, given the circumstances of this case, Tax Partners should be liable to third parties (such as Mill Owner and Burt) by virtue of its contractual relationship. Plaintiffs' allegation that Tax Partners had "a vested interest in the success of the Project," A10, does not on its own establish a legal duty.

Plaintiffs' other theory, only scantily invoked in their brief, is that past dealings between Burt and First NBC gave rise to a duty of care. Assuming Plaintiffs sufficiently raised this argument, it flies in the face of the distinct entity concept in corporate law. *See, e.g.*, *Costas v. First Fed. Sav. & Loan Ass'n*, 321 S.E.2d 51, 56 (S.C. 1984) ("It is recognized that a corporation is an entity separate and distinct from its officers and stockholders."). Burt created the corporate plaintiff, Mill Owner, in connection with this project. Plaintiffs cite no authority to suggest that Mill Owner can rely on Burt's past dealings with First NBC, before Mill Owner even existed, to allege that a duty of care was owed to Mill Owner. Similarly, Burt alleges past dealings only with First NBC, not with Tax Partners, the entity on whose duties this case turns. Plaintiffs cite no authority showing that South Carolina law recognizes negligence claims against corporations based on a history of transactions between other parties, and we again decline to create new South Carolina law.

*Fifth*, the district court correctly held that Plaintiffs' proposed claim for intentional interference with prospective contractual relations would also fail under Rule 12(b)(6). In order to prevail on an intentional interference claim, Plaintiffs must plead "(1) the defendant intentionally interfered with the plaintiff's potential contractual relations; (2) for an improper purpose or by improper methods; (3) causing injury to the plaintiff." *Crandall Corp. v. Navistar Int'l Transp. Corp.*, 395 S.E.2d 179, 180 (S.C. 1990). With respect to the "improper purpose or methods" factor, Plaintiffs must plead a "purpose or motive by the defendant other than the proper pursuit of its own contractual rights." *United Educ. Distribs., LLC v. Educ. Testing Serv.*, 564 S.E.2d 324, 328 (S.C. Ct. App. 2002). Even if the FDIC was attempting to induce a more lucrative buyout offer for Tax Partners' share, or if the FDIC did breach its contractual duties to Mill Manager by refusing consent, such behavior was not improper *with respect to Plaintiffs*, who were not parties to the allegedly breached contract. Plaintiffs do not cite, and we are unaware of, any South Carolina cases that hold a breach of contractual obligation to a third party constitutes an improper method for purposes of intentional interference.

Lastly, Plaintiffs throughout their brief contend that it was error for the district court not to offer them a second chance to amend their pleadings after finding that their first set of proposed amendments would not pass muster under Rule 12(b)(6). But Plaintiffs never asked the district court for leave to amend a second time, thus forfeiting the opportunity to ask this court for such leave. *City of Harper Woods Emps.' Retirement Sys. v. Olver*, 589 F.3d 1292, 1304 (D.C. Cir. 2009) ("When a plaintiff fails to seek leave from the District Court to amend its complaint … it forfeits the right to seek leave to amend on appeal.").

\*\*\*

4

For the foregoing reasons, we affirm the district court in full.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:   /s/
      Daniel J. Reidy
      Deputy Clerk