THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Dove Data
 Products, Inc., Appellant,
 
 
 

v.

 
 
 
 Jamie DeVeaux, Respondent.
 
 
 

Appeal From Florence County
The Hon. Thomas A. Russo, Circuit Court
 Judge
Unpublished Opinion No.  2008-UP-202
Heard December 12, 2007  Filed March 24,
 2008
AFFIRMED

 
 
 
 Paul M. Platte, of Columbia, for
 Appellant.
 Walker Coleman and Ellis Lesemann, both of
 Charleston, for Respondent.
 
 
 

PER CURIAM: Dove
 Data Products, Inc. (Dove Data) brought suit against Jamie DeVeaux (DeVeaux), a
 former employee, alleging eight causes of action: (1) breach of contract; (2)
 breach of the implied covenant of good faith and fair dealing; (3)
 misappropriation of trade secrets; (4) intentional interference with
 contractual relations; (5) intentional interference with prospective
 contractual relations; (6) breach of the employee duty of loyalty; (7)
 violation of the South Carolina Unfair Trade Practices Act (UTPA); and (8)
 equitable relief.  Dove Data appeals the trial courts grant of summary
 judgment in favor of DeVeaux on all eight causes.  Dove Data additionally
 appeals the trial courts grant of DeVeauxs motion to dissolve preliminary
 injunction.  We affirm.  
FACTS
Dove Data is engaged in the business of
 the manufacture, re-manufacture, and sale of computer printer, facsimile
 machine, and copier supplies.  For approximately nine and one-half years,
 DeVeaux was employed with Dove Data as a marketing representative and account
 manager.[1]    During DeVeauxs employment, he sold toner cartridges and related
 products to customers in the Charleston, Myrtle Beach, and Savannah areas.
 
DeVeaux began working for Dove Data in August 1995.  Thirteen
 months later, Dove Data presented DeVeaux with an Employee Non-Compete
 Agreement and Employee Non-Disclosure Agreement.   The Employee
 Non-Compete Agreement included a non-compete covenant, one year in duration and
 completely unrestricted as to geographic scope.   
On January 31, 2001, over five years after the inception of
 DeVeauxs employment, Dove Data presented DeVeaux with a new employment
 agreement (Employment Agreement).  DeVeaux signed the Employment
 Agreement, which contained a covenant not to compete and a covenant not to
 disclose.   The covenant not to compete provided: 

 (a) [DeVeaux] covenants that he will not at any time during his
 employment by [Dove Data] or within a period of two (2) years after the
 termination of his employment with or without cause:
 
 (1) . . . within [DeVeauxs] territory,
 engage in the business of selling, soliciting or taking orders for computer
 printer, facsimile machine, and copier supplies, including toner and ink
 products, in competition with the business of [Dove Data].
 (2) . . . within [DeVeauxs] territory or
 any other area assigned to him during any part of the two (2)-year period
 immediately preceding the termination of his employment, sell, solicit, or take
 orders for computer printer, facsimile machine, and copier supplies, including
 toner and ink products, from any person or entity who or which shall have been
 a customer or account of [Dove Datas] during any part of the two (2)-year
 period immediately preceding the termination of his employment or who or which
 was actively solicited as a customer or account by [Dove Data] during the two
 (2)-year period immediately preceding the termination of his employment.
 
 (3) . . . within [DeVeauxs] territory,
 solicit, divert, take away, or interfere with or attempt to solicit, divert,
 take away, or interfere with any of the custom, trade, business or patronage of
 [Dove Data] or in any manner, directly or indirectly, hire, employ, or
 interfere with any person who shall be employed by [Dove Data]. 
 

The Employment Agreement indicated that
 continued employment, which included continued access to certain information,
 was the consideration provided DeVeaux in exchange for entering the Employment
 Agreement: 

 [Dove Data] hereby agrees to continue the employment of [DeVeaux]
 as a salesman.  [DeVeaux] hereby agrees to continue in such employment. 
 [DeVeaux] has been and will be furnished with certain data reflecting the names
 and addresses of present and prospective customers or accounts of [Dove Data]
 and [Dove Data]s methods of selling and delivering products to said customers
 or accounts.  [DeVeaux] recognizes and acknowledges that the above-described
 data is confidential information constituting a business secret and/or a trade
 secret of [Dove Data].

On October 14, 2004, DeVeaux filed
 articles of incorporation for a new company, Southpoint Products, Inc.
 (Southpoint).   On the evening of January 23, 2005, DeVeaux faxed a resignation
 letter, dated January 24, 2005, to Dove Data, which read: please consider this
 letter as my resignation from Dove Data Products as of 10 am today.  On the
 afternoon of January 24, 2005, DeVeaux began to compete with Dove Data.    
 
Dove
 Data filed this action alleging eight causes of action and seeking a
 preliminary injunction against DeVeaux.  The trial court granted Dove Datas
 motion for preliminary injunction.  Under the preliminary injunction, DeVeaux
 maintained the right to compete with Dove Data but was temporarily prohibited
 from soliciting or doing business with certain customers identified on an
 attached list.  The injunction and attached list of customers were filed
 with the court.  
On
 October 10, 2005, Dove Data filed a motion to hold DeVeaux in contempt, based
 on allegations that he had given a copy of the preliminary injunction order to
 two of Dove Datas competitors.  This motion was set for a hearing on two
 occasions, but was continued on Dove Datas request both times.  On May 3,
 2006, DeVeaux filed a motion for summary judgment and motion to dissolve the
 preliminary injunction.  A hearing was set for May 22, 2006, on all
 pending motions.  At the hearing, both parties indicated they wished to go
 forward on DeVeauxs motion for summary judgment and in the event summary
 judgment was not granted, Dove Data indicated it would request a third
 continuance of the motion for contempt.        
The trial court granted summary judgment
 to DeVeaux on all eight causes, dissolved the preliminary injunction, and
 denied the motion for contempt as moot in light of the fact that there was no
 legal basis for the injunction.  This appeal followed.
STANDARD OF REVIEW
A trial court
 should grant a motion for summary judgment when the pleadings, depositions,
 answers to interrogatories, and admissions on file, together with the
 affidavits, if any, show that there is no genuine issue as to any material fact
 and that the moving party is entitled to a judgment as a matter of law.  Rule
 56(c), SCRCP; Wells v. City of Lynchburg, 331 S.C. 296, 301, 501
 S.E.2d 746, 749 (Ct. App. 1998).  When reviewing a grant of a summary judgment
 motion, this court applies the same standard of review as the trial court.  Helms
 Realty, Inc. v. Gibson-Wall Co., 363 S.C. 334, 340, 611 S.E.2d 485, 488
 (2005).  In determining whether any triable issues of fact exist, the reviewing
 court must consider all ambiguities, conclusions, and inferences arising in and
 from the evidence in a light most favorable to the non-moving party.  Willis
 v. Wu, 362 S.C. 146, 151, 607 S.E.2d 63, 65 (2004).  
Summary
 judgment is not appropriate where further inquiry into the facts of the case is
 desirable to clarify the application of the law.  Gadson v. Hembree, 364
 S.C. 316, 320, 613 S.E.2d 533, 535 (2005).  Even when there is no dispute as to
 evidentiary facts, but only as to the conclusions or inferences to be drawn
 from them, summary judgment should be denied.  Nelson v. Charleston County Parks & Recreation Commn, 362 S.C. 1, 5, 605 S.E.2d 744, 746 (Ct. App.
 2004).  However, when plain, palpable, and indisputable facts exist on which
 reasonable minds cannot differ, summary judgment should be granted.  Ellis
 v. Davidson, 358 S.C. 509, 518, 595 S.E.2d 817, 822 (Ct. App. 2004).  
 
The
 moving party has the initial responsibility of demonstrating the absence of a
 genuine issue of material fact.  Rule 56(c), SCRCP.  Once the moving
 party carries its initial burden, the non-moving party must do more than
 simply show that there is some metaphysical doubt as to the material facts but
 must come forward with specific facts showing that there is a genuine
 issue for trial.  Baughman v. American Telephone and Telegraph Co.,
 306 S.C. 101, 115, 410 S.E.2d 537, 545 (1991) (emphasis in original) (citation
 omitted).  The non-moving party must set forth facts, as would be admissible
 in evidence, to show that a true jury issue exists.  Rule 56(e), SCRCP. 
 Ultimate or conclusory facts and conclusions of law, as well as statements on
 information and belief cannot be utilized on a summary judgment motion.  Dawkins
 v. Fields, 354 S.C. 58, 68, 580 S.E.2d 433, 438 (2003) (quoting Charles
 Alan Wright et al., Federal Practice and Procedure § 2738 (3d ed. 2007)).    
 
LAW/ANALYSIS
Dove Data claims the trial court erred in granting summary
 judgment in favor of DeVeaux on Dove Datas eight causes of action.[2]  Dove Data also claims the trial
 court erred in dissolving the preliminary injunction against DeVeaux.
I. Breach
 of Contract 
Dove
 Data contends summary judgment on its breach of contract claim was improper
 because the trial court improperly applied the additional consideration
 requirement of a non-compete covenant to the non-solicitation clause provided
 in the Employment Agreement.[3] 
 Regardless, Dove Data contends it presented evidence that it provided DeVeaux
 additional consideration, other than at-will employment, for entering the
 Employment Agreement.  
A. Non-Compete
 vs. Non-Solicitation 
On
 appeal, Dove Data claims non-solicitation covenants are separate and distinct
 from non-compete covenants and, as such, do not require additional
 consideration for support.  Dove Data further contends because DeVeaux signed
 an earlier non-compete agreement in 1996, additional consideration was not
 necessary when DeVeaux signed the Employment Agreement in 2001.  We disagree.  
 
South Carolina disfavors restrictive post-employment covenants and will critically examine
 and construe such covenants against the employer.  See Rental Uniform
 Serv. of Florence, Inc. v. Dudley, 278 S.C. 674, 301 S.E.2d 142 (1983); Oxman
 v. Sherman, 239 S.C. 218, 122 S.E.2d 559 (1961); Faces Boutique, Ltd. v.
 Gibbs, 318 S.C. 39, 41-42, 455 S.E.2d 707, 708 (Ct. App. 1995).  For this
 type of restrictive covenant to be upheld, it must be: (1) necessary for the
 protection of the legitimate interest of the employer; (2) reasonably limited
 in its operation with respect to time and place; (3) not unduly harsh and
 oppressive in curtailing the legitimate efforts of the employee to earn a
 livelihood; (4) reasonable from the standpoint of sound public policy; and (5)
 supported by valuable consideration.  Faces Boutique, Ltd., 318 S.C. at
 42, 455 S.E.2d at 708.  When a restrictive covenant is included in an initial
 contract of employment, at-will employment constitutes sufficient consideration
 to support the covenant.  Riedman v. Jarosh, 290 S.C. 252, 349 S.E.2d
 404 (1986).  However, when a covenant is entered into after the inception of
 employment, separate consideration, in addition to continued at-will
 employment, is necessary in order for the covenant to be enforceable.  Poole
 v. Incentives Unlimited, Inc., 345 S.C. 378, 382, 548 S.E.2d 207, 209
 (2001) (Poole II). 
First, Dove Data claims there is a distinction between non-compete
 and non-solicitation covenants and that no South Carolina court has applied the
 additional consideration requirement, as discussed in Poole II, to a
 non-solicitation covenant.   Thus, Dove Data contends the trial courts
 application of Poole II to this case was improper.
Dove Data correctly asserts a distinction exists between a
 non-compete covenant and a non-solicitation covenant.  Typically a non-compete
 covenant prohibits an employee from competing with an employer within a
 specific geographic location and must be reasonably limited in its operation
 with respect to time and place.  Rockford Mfg., Ltd. v. Bennet,
 296 F. Supp. 2d 681, 686 (D.S.C. 2003); Collins Music Co. v. Parent, 288
 S.C. 91, 93, 340 S.E.2d 794, 795 (Ct. App. 1986).  A non-solicitation covenant
 often does not contain a limitation as to place, as it restricts contacts with
 existing customers rather than competition within a specific geographic area.  South Carolina law provides that a customer-based restriction can substitute for a
 limitation as to a place in a non-solicitation covenant.  Wolf v. Colonial
 Life & Acc. Ins., 309 S.C. 100, 109, 420 S.E.2d 217, 222 (Ct. App.
 1992) (stating that [p]rohibitions against contacting existing customers can
 be a valid substitute for a geographic limitation).  We do not find any legal
 distinction in these standards dispositive to this matter. 
Dove Data additionally claims, under this courts intermediate
 decision in Poole v. Incentives Unlimited, Inc., 338 S.C. 271, 274, 525
 S.E.2d 898, 900 (Ct. App. 1999) (Poole I), additional consideration was
 not necessary in this case because DeVeaux was already subject to an existing
 non-compete covenant.  Dove Data contends this court found in Poole I,
 if an at-will employment relationship already exists with a covenant not to
 compete, any future restrictive covenant need not be based upon additional
 consideration more than at-will employment.  Initially, we find Dove Data
 erroneously interprets our holding in Poole I and ignores the holding of Poole II in which the supreme court adopt[ed] the rule that when a
 covenant is entered into after the inception of employment, separate
 consideration, in addition to continued at-will employment, is necessary in
 order for the covenant to be enforceable.  Poole II, 345 S.C. at
 382, 548 S.E.2d at 209.  Regardless, Dove Datas argument relies on the
 unenforceable non-compete covenant contained in the 1996 Employee Non-Compete
 Agreement.  The 1996 Employee Non-Compete Agreement had no geographic
 limitation or customer-based limitation, rendering it void and unenforceable.  See,
 e.g., Stonhard, Inc. v. Carolina Flooring Specialists, Inc., 366
 S.C. 156, 160, 621 S.E.2d 352, 354 (2005) (a restrictive covenant without a
 geographic limitation is void and unenforceable).  
Accordingly, we find no reason to limit the additional
 consideration requirement, as discussed in Poole II, solely to
 non-compete covenants.[4] 
 Therefore, we hold the trial court properly applied Poole II to the
 non-solicitation covenant contained in the Employment Agreement.
B. Consideration 
Regardless
 of whether the trial court improperly applied Poole II to this case,
 Dove Data argues the trial court erred in precluding evidence of consideration
 given to support the non-solicitation covenant contained in the Employment
 Agreement.  We disagree. 
At trial, Dove Data argued it provided additional consideration to
 DeVeaux for entering the Employment Agreement.  Dove
 Data averred DeVeaux received a $50 increase in his monthly vehicle allowance
 as specific consideration for the Employment Agreement.[5]   Dove
 Data further argued the modification of the 1996 Employee Non-Compete Agreement
 and its alleged forbearance of rights under this agreement constituted
 additional consideration.  The trial court
 found the Employment Agreement set forth the consideration that was exchanged
 between the parties and found it did not reference any of the additional items
 of consideration alleged by Dove Data.  The
 trial court, therefore, excluded the additional items under the parol evidence
 rule.
On appeal Dove Data contends it was improper to exclude the parol
 evidence of consideration because the language of consideration used in the
 Employment Agreement was a mere recital.  
Under South Carolina law, the parol evidence rule excludes
 evidence which would give a perfectly clear agreement a different meaning or
 effect than that indicated by the plain language of the agreement.  Taylor
 by Taylor v. Taylor, 291 S.C. 261, 264, 353 S.E.2d 156, 158 (Ct. App.
 1987).  If the writing on its face appears to express the whole agreement,
 parol evidence cannot be admitted to add another term thereto.  Blackell v.
 Faucett, 117 S.C. 60, 108 S.E. 295, 297 (1921).  The parol evidence rule is
 particularly applicable where the writing in question has an integration
 clause.  Wilson v. Landstrom, 281 S.C. 260, 266, 315 S.E.2d 130, 134
 (Ct. App. 1984) (integrated agreement cannot be varied or contradicted by parol
 evidence omitted from the writing).  
An exception to the parol evidence rules exists when [the]
 language of consideration [in an agreement] is intended as a mere recital.  Iseman
 v. Hobbs, 290 S.C. 482, 483, 351 S.E.2d 351, 352 (Ct. App. 1986).  Further,
 parol evidence may be admitted to show a separate and independent agreement
 which is not inconsistent with the terms of a contemporaneous agreement if it
 can be inferred the parties did not intend the written paper to be a complete
 integration of the agreement.  Beckham v. Short, 294 S.C. 415, 418, 365
 S.E.2d 42, 43 (Ct. App. 1988).
We reject Dove Datas claim that the consideration language
 contained in the Employment Agreement was a mere recital.  The Employment
 Agreement provides, in consideration of the premises and of the mutual
 covenants and agreements herein contained, the parties hereto covenant and
 agree as follows . . . .  The Employment Agreement then lists various promises Dove
 Data made to DeVeaux.  The Employment Agreement contains no further recitals of
 other consideration that are not specifically referenced.  Furthermore, the
 Employment Agreement contains a detailed integration clause to illustrate the
 parties clearly intended the Employment Agreement would be a complete
 integration of their agreement.   
Thus,
 we find Dove Datas purported evidence of the existence of additional
 consideration for the Employment Agreement is inadmissible parol evidence and
 hold the trial court properly precluded such evidence. 
Because
 the Employment Agreement, and thereby the non-solicitation covenant, was
 entered into after the inception of employment, separate consideration, in
 addition to continued at-will employment, was necessary in order for the
 covenant to be enforceable.  See Poole II, 345 S.C. at
 382, 548 S.E.2d at 209.  A review of the arguments made to the trial court
 reveals that separate and valuable consideration, in addition to continued
 at-will employment, was not provided to DeVeaux for entering the Employment
 Agreement.  Therefore, we find the trial court, in considering the specific
 grounds raised, properly granted summary judgment in favor of DeVeaux on the
 claim for breach of contract.
Further,
 at oral argument Dove Data presented a new additional consideration argument. 
 Dove Data claimed the Employment Agreements termination provision provided for
 a two week notice period, not contained in the earlier Employee Non-Disclosure
 Agreement.  In addition, the termination provision provides [Dove Data]
 reserves the right to substitute two (2) weeks severance pay in lieu of two
 (2) weeks previous notice in writing of termination.   
Valuable
 consideration may consist of some right, interest, profit, or benefit accruing
 to one party or some forbearance, detriment, loss or responsibility given,
 suffered or undertaken by the other.  Prestwick Golf Club, Inc. v.
 Prestwick Ltd. Pship, 331 S.C. 385, 389, 503 S.E.2d 184, 186 (Ct. App.
 1998).  A change in an employees contractual relationship with his employer
 may suffice as consideration for entering a new employment contract, when it
 confers a valuable benefit to the employee.  See, e.g.,  Std. Register
 Co. v. Kerrigan, 238 S.C. 54, 73-74, 119 S.E.2d 533, 543-44 (1961).  
 
The court
 recognizes, in this case, the change in the Employment Agreements termination
 provision conferred a valuable benefit to DeVeaux.  However, Dove Data failed
 to raise this argument before the trial court or in its appellate brief.  The
 first time Dove Data raised the claim that a change in the termination
 provision sufficed as additional consideration was at oral argument before this
 court.  Therefore, Dove
 Datas claim is not properly preserved for appellate review.  See Staubes
 v. City of Folly Beach, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000)
 (holding that issues must be raised and ruled upon in the trial court to be
 preserved for appellate review).  
II. Breach
 of the Implied Covenant of Good Faith and Fair Dealing
Dove
 Data contends summary judgment on its breach of implied covenant of good faith
 and fair dealing claim was improper because genuine issues of material fact
 exist as to the validity and enforceability of the Employment Agreement.  We
 disagree. 
A claim
 for breach of implied covenant of good faith and fair dealing is considered to
 be subsumed within a claim for breach of contract and no longer exists as an
 independent cause of action.  RoTec Servs., Inc. v. Encompass Servs., Inc.,
 359 S.C. 467, 473, 597 S.E.2d 881, 884 (Ct. App. 2004).  Accordingly, because
 we find summary judgment was proper on the claim for breach of contract, we
 find no error in the trial courts grant of summary judgment on this claim.
III. Misappropriation
 of Trade Secrets
Dove
 Data claims summary judgment was improper on its violation of the South
 Carolina Uniform Trade Secrets Act (the Act) claim because it presented
 evidence DeVeaux misappropriated Dove Datas trade secrets. We disagree.
 
The Act
 states [e]very employee who is informed of or should reasonably have known
 from the circumstances of the existence of any employers trade secret has a
 duty to refrain from using or disclosing the trade secret without the employers
 permission.  S.C. Code Ann. § 39-8-30(B) (Supp. 2006).  The Act defines
 misappropriation as the use of a trade secret, without consent, by a person who
 knew or had reason to know that his knowledge of the trade secret, under the
 circumstances, gave rise to a duty to maintain its secrecy or limit its use. 
 S.C. Code Ann. § 39-8-20(2)(c)(ii)(B) (Supp. 2006).  The Act defines trade
 secret[s] as information including, but not limited to, a formula, pattern,
 compilation, program, device, method, technique, product, system, or process,
 design, prototype, procedure, or code that derives independent economic value
 from both being generally known to others who could obtain economic value from
 its disclosure and is the subject of efforts used to maintain its secrecy.  S.C.
 Code Ann. § 39-8-20(5)(a) (Supp. 2006).  
Dove
 Data contends it gave DeVeaux trade secrets, including customer and pricing
 lists, profit margins and operating policies, and that he is now using the
 information to compete directly with Dove Data.  The trial court found no
 specific evidence DeVeaux was physically in possession of the information or
 that he misappropriated the information.   The trial court found the only specific allegation offered
 by Dove Data was that DeVeaux purportedly admitted to Opel he provided two
 individuals with a copy of the preliminary injunction and attached list of
 customer names.  The trial court held, assuming DeVeaux did give the document
 to other people, neither the preliminary injunction nor the attached customer
 list could constitute a trade secret because they were public court
 documents.   Thus, the trial court found the record did not contain any
 specific, admissible evidence DeVeaux engaged in misappropriation and
 therefore, did not reach the issue of whether the information provided to
 DeVeaux actually constituted trade secrets under the Act.
 We
 agree with the trial court that whatever trade secret status Dove Data believed
 it had in the names of its customers was lost the moment it was filed as part
 of the public record.[6]  See Id. (defining a trade secret as something that cannot be
 readily ascertainable by proper means by the public).  In light of our
 disposition, we need not address whether the information provided to DeVeaux by
 Dove Data constitutes a trade secret under the Act.  See Hagood v.
 Sommerville, 362 S.C. 191, 199, 607 S.E.2d 707, 711 (2005) (stating the
 appellate court need not address additional issues when resolution of prior
 issue is dispositive).          
Dove Data also argues it can prove its claim of trade secret
 misappropriation by demonstrating DeVeauxs new employment will inevitably lead
 him to rely on the information provided by Dove Data.  Dove Datas inevitable
 disclosure argument was not raised or ruled upon at the trial court level and
 therefore, we find the issue is not adequately preserved for review.  See Staubes v. City of Folly Beach, 339 S.C. 406, 412, 529 S.E.2d 543, 546
 (2000) (holding that issues must be raised and ruled upon in the trial court to
 be preserved for appellate review).
Therefore, we find the trial court properly granted summary
 judgment on Dove Datas misappropriation of trade secrets claim in favor of
 DeVeaux.      
IV. Tortious
 Interference with Contractual Relations 
Dove
 Data further asserts summary judgment on its tortious interference with
 contractual relations claim was improper because it presented evidence of
 contracts with customers in DeVeauxs former territory and evidence DeVeaux
 interfered with those contracts.  We disagree.  
To
 state a cause of action for interference with a contractual relationship, the
 plaintiff must prove: (1) the existence of a contract; (2) knowledge of the
 contract by the tortfeasor; (3) intentional procurement by the tortfeasor of
 the contracts breach; (4) absence of justification; and (5) damages resulting
 therefrom.  Love v. Gamble, 316 S.C. 203, 213-14, 448 S.E.2d 876, 882
 (Ct. App. 1994).  
The trial court found Dove Data could not prove the existence of a
 contract and thus, there was no cause of action for intentional interference
 with a contractual relationship.  During Dove Datas 30(b)(6) deposition, Dove Data admitted
 that it did not have contracts with any of the customers located in DeVeauxs
 former sales territory.  Dove Data also admitted that no customers breached or
 canceled contracts as a result of DeVeauxs alleged actions.  The trial court
 relied on these admissions to grant summary judgment on this claim.
 On appeal, Dove Data contends the supplemental affidavit of David
 Harris, Dove Datas vice president of administration, provides evidence DeVeaux
 interfered with its contracts.  Harris affidavit reads [DeVeaux] interfered
 with contracts held by Dove Data.  The trial court reviewed the supplemental
 affidavit and found it contained conclusory allegations . . . [that] added
 nothing probative and did not resolve the admitted factual defects with this
 claim.  We agree.  A party opposing summary judgment must do more than rely on
 mere allegations.  Dyer v. Moss, 284 S.C. 208, 211, 325 S.E.2d 69, 70
 (Ct. App. 1985).  The affidavit fails to identify any contract, date of breach,
 customer who breached its contract, or damage incurred because of any action on
 the part of DeVeaux.  Therefore, we find the trial court properly granted
 summary judgment on the tortious interference with contractual relations claim
 in favor of DeVeaux.      
V. Intentional
 Interference with Prospective Contractual Relations 
Dove Data also asserts summary judgment on its intentional
 interference with prospective contractual relations claim was improper because
 Dove Data presented evidence it lost potential contracts and business as a
 result of DeVeauxs disclosure of confidential information.  We disagree. 
 
The elements for the tort of intentional interference with
 prospective contractual relations are: (1) intentional interference with the
 plaintiffs potential contractual relations; (2) for an improper purpose or by
 improper methods; and (3) causing injury to the plaintiff.  United Educ. Distribs.,
 LLC v. Educ. Testing Serv., 350 S.C. 7, 14, 564 S.E.2d 324, 328 (Ct. App.
 2002).  
Here, the trial court found Dove Data failed to evince prospective
 contractual relations based on the nature of Dove Datas business not to enter
 formal contractual relations with its customers.  However, [t]he reasonable
 expectation [of business relations] need not be based on an enforceable
 contract.  Id. at 16, 564 S.E.2d at 329.  As such, the fact that Dove
 Data did not enter into formal contracts with customers does not preclude Dove
 Data from claiming a reasonable expectation of business with a particular
 customer.  Notwithstanding, we agree with the ultimate conclusion of the trial
 court that Dove Data failed to provide evidence to support an intentional
 interference with prospective contractual relations claim because the record
 does not support the necessary specificity as to any prospective contract or
 business expectation that would have been entered or obtained but for the
 alleged wrongful interference of DeVeaux.
In United Educational Distributors, LLC, after reviewing
 the limited South Carolina precedent on an intentional interference of
 prospective contractual relations claim, this court indicated a plaintiff must
 demonstrate the loss of an identifiable contract or [identifiable]
 expectation.  Id. at 14, 564 S.E.2d at 328 (citations omitted); see Love, 316 S.C. at 205-07, 448 S.E.2d at 877-78 (alleged interference
 with pickle supply contract); see also S. Contracting Inc. v. H. C.
 Brown Constr. Co., 317 S.C. 95, 96-97, 450 S.E.2d 602, 603-04 (Ct. App.
 1994) (alleged interference with subcontracting agreement).  Accordingly, this
 court determined that a general allegation of interference absent a specific
 interference with a particular prospective contract or identifiable business
 expectation is insufficient to support this claim.  United Educ. Distribs.,
 LLC, 350 S.C. at 14-18, 564 S.E.2d at 328-330; see Gaillard v.
 Fleet Mortgage Corp., 880 F. Supp. 1085 (D.S.C. 1995) (dismissing
 intentional interference with prospective contractual relations claim because
 plaintiff merely alleged general interference with potential clients).  Further,
 a plaintiff asserting this cause of action must demonstrate the reasonable
 probability of entering into a specific contract or business expectation but
 for the interference of defendant.   United Educ. Distribs., LLC, 350
 S.C. at 18, 564 S.E.2d at 330; see Walker v. Sloan, 137
 N.C.App. 387, 393, 529 S.E.2d 236, 242 (2000); see also Kramer v.
 Pollock-Krasner Found., 890 F. Supp 250, 258 (S.D.N.Y. 1995) (holding
 intentional interference with prospective contractual relations claims must
 specify some particular, existing business relationship through which plaintiff
 would have done business but for the allegedly tortious behavior).  
Here, Dove Data has not demonstrated the loss of a specific
 prospective contract or a business expectation. Rather, Dove Data alleges
 generally DeVeauxs interference caused Dove Data to lose business. Dove Data
 asserts Harris affidavit provides evidence of its lost business. The affidavit
 states, [DeVeaux]s interference resulted in Dove Data losing contracts that
 would be valuable to Dove Datas business . . . Dove Data has lost potential
 contracts to [two competitors] as a result of [DeVeaux]s disclosure of Dove
 Datas confidential information.  These allegations, however, are general
 assertions that do not identify a specific prospective contract or a particular
 business expectation Dove Data would have obtained but lost due to the alleged
 improper interference. Having failed to specify an identifiable prospective
 contract or identifiable prospective business expectation it would have entered
 or obtained but for DeVeauxs interference, Dove Data has failed to demonstrate
 any genuine issue of material fact as to at least one of the elements of the
 claim for intentional interference with prospective contractual relations.
Therefore, we find the trial court properly granted summary
 judgment on the intentional interference with prospective contractual relations
 claim in favor of DeVeaux.
VI. Breach
 of the Employee Duty of Loyalty
Dove Data further contends DeVeaux breached his duty of loyalty by
 forming Southpoint specifically for the purpose of competing with Dove Data. 
 We disagree. 
It is
 implicit in any contract for employment that the employee shall remain faithful
 to the employers interest throughout the term of employment.  An employee has
 a duty of fidelity to his employer.  Berry v. Goodyear, 270 S.C. 489,
 491, 242 S.E.2d 551, 552 (1978).  Solicitation of an employers customers is a
 breach of the duty of loyalty.  Futch v. McAllister Towing of Georgetown,
 Inc., 335 S.C. 598, 606, 518 S.E.2d 591, 595 (1999).  However, merely
 preparing and submitting forms to create a new corporation . . . likely will be
 seen as permissible pretermination planning.  Id. at 610, 518 S.E.2d at
 597. 
On appeal, Dove Data bases its claim on DeVeauxs formation of
 Southpoint, three months prior to his resignation, and provides only a
 conclusory allegation DeVeaux was actively competing against Dove Data.   DeVeauxs
 actions relating to the formation of Southpoint were permissible under South Carolina law and thereby not a breach of the duty of loyalty.  Further, after a
 review of the record, we find no evidence of a specific date, customer or
 circumstance of a pretermination solicitation by DeVeaux.  Therefore, we find
 the trial court properly granted summary judgment on the breach of the duty of
 loyalty claim in favor of DeVeaux.      
VII. Unfair
 Trade Practices Act 
Lastly,
 Dove Data alleges summary judgment was improper because DeVeauxs actions have
 harmed and continue to harm the public in violation of the South Carolina
 Unfair Trade Practices Act (UTPA).  We disagree.
UTPA
 provides that unfair methods of competition and unfair or deceptive acts or
 practices in the conduct of any trade or commerce are declared unlawful.  S.C.
 Code Ann. § 39-5-20(a) (Supp. 2006).  Section 39-5-140(a) creates a private
 right of action in favor of [a]ny person who suffers any ascertainable loss of
 money or property, real or personal, as a result of the use or employment by
 another person of an unfair or deceptive method.  However, to be actionable,
 the alleged unfair or deceptive acts or practices must adversely affect the
 public interest, not merely the interests of the private parties to the
 particular dispute.  Noack Enters., Inc. v. Country Corner Interiors of
 Hilton Head Island, Inc., 290 S.C. 475, 479, 351 S.E.2d 347, 350 (Ct. App.
 1986) ([t]he act is not available to redress a private wrong where the public
 interest is unaffected). 
Dove Data claims DeVeauxs misappropriation of trade secrets has
 an adverse impact on the public.  Dove Data suggests DeVeauxs actions will
 cause businesses to be less effective, will harm all industries, will cast
 a negative shadow on the technology industry, and will cause the public not to
 trust the technology industry.  The trial court found Dove Datas assertions
 wholly unsupported by any admissible evidence.  We agree.  
Our courts have made it clear that UTPA is not available to
 redress a private wrong where the public interest is unaffected.  UTPA is not
 an alternative vehicle to pursue an alleged breach of contract.  See, e.g., Key Co., v. Fameco Distribs., Inc., 292 S.C. 524, 526-27, 357 S.E.2d
 476, 478 (Ct. App. 1987).  Even an intentional breach of a contract does not
 rise to the level of a violation of UTPA.  Id.  The supreme court
 addressed a similar UTPA claim between a business and a former employee, turned
 competitor, in the case of Florence Paper Co. v. Orphan, 298 S.C. 210,
 379 S.E.2d 289 (1989).  In Florence, employer alleged employees use of
 privileged information concerning employers customers constituted unfair
 methods of competition and entitled employer to bring his cause of action under
 UTPA.  Id. at 212, 379 S.E.2d at 291.  The supreme court upheld the
 trial courts grant of summary judgment on the UTPA claim on the basis that the
 public interest was unaffected by a dispute between two direct competitors over
 customer relationships and alleged interference with contract.  Id. at 213, 379 S.E.2d at 291.  
 
As in Florence, Dove Data failed to present evidence the
 greater public interest was actually affected by DeVeauxs actions.  Therefore,
 we find the trial court properly granted summary judgment on the UTPA claim in
 favor of DeVeaux.    
VIII.  Preliminary
 Injunction  
In addition, Dove Data argues if this court were to find summary
 judgment improper as to any one of Dove Datas eight causes, the preliminary injunction
 should be reinstated.  The purpose of a preliminary injunction is to preserve
 the status quo to avoid possible irreparable injury to a party pending
 litigation.  Zabinski v. Bright Acres Assocs., 346 S.C. 580, 601, 553
 S.E.2d 110, 121 (2001).  Because we affirm the trial courts grant of summary
 judgment on all eight causes of action in favor of DeVeaux, there is no
 continuing basis for the preliminary injunction.  Therefore, we find the trial
 court did not err in dissolving the preliminary injunction.
CONCLUSION
Based on the
 foregoing, the trial courts order is 
AFFIRMED.
HUFF and PIEPER,
 JJ., and CURETON, A.J., concur.     

[1] DeVeaux was an at-will employee at
 all times.      
[2] Additionally, Dove Data contends summary judgment as
 to all eight causes of action was premature because it did not have a fair and
 full opportunity to complete discovery.  Dove Data did not object and, in fact,
 assented to moving forward with the summary judgment motion.  A party
 cannot complain of a ruling, which the party itself induced or invited the
 trial court to make.  Floyd v. Thorton, 220 S.C. 414, 426, 68 S.E.2d
 334, 339-40 (1951).  
[3] Although the covenant not to compete in the
 Employment Agreement contained various post-employment restrictions, Dove Data
 seeks only to enforce the non-solicitation clause.  
[4] In fact, federal courts have already
 applied Poole II to non-solicitation covenants in several cases.  See,
 e.g., Rockford Mfg., 296 F. Supp. 2d 681, 690 (citing Poole II as applicable to non-solicitation covenant); Nucor Corp. v. Bell, 482 F.
 Supp. 2d 714, 730 (D.S.C. 2007) (noting the rationale of Poole II and
 applying Rockford to non-solicitation and non-disclosure covenants).  
 
[5] This argument first arose in Dove Datas Rule
 30(b)(6) deposition of Mark Opel (Opel), the vice-president of sales for Dove
 Data.  
[6] No attempt was made to file the list under seal
 nor was any attempt made to subject the list to a confidentiality agreement.